**McGuireWoods LLP**
Sabrina A. Beldner, Esq. (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Amy E. Beverlin, Esq. (SBN 284745)
    Email: abeverlin@mcguirewoods.com
Ashley R. Li, Esq. (SBN 317305)
    Email: ali@mcguirewoods.com
1800 Century Park East, 7th Floor
Los Angeles, CA 90067
Tel:   (310) 315-8200
Fax:  (310) 315-8210

Sylvia J. Kim, Esq. (SBN 258363)
    Email:  skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Tel.:   (415) 844-9944
Fax:  (415) 844-9922

Attorneys for Defendant CENTERRA GROUP, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERIK DULEY, an individual, on behalf of himself and all members of the putative class,<br><br>Plaintiff,<br><br>vs.<br><br>CENTERRA GROUP, LLC, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 2:19-cv-08754-AB-JC<br><br>**DEFENDANT CENTERRA GROUP, LLC'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6):**<br><br>**(1)    NOTICE OF MOTION**<br><br>**(2)    REQUEST FOR JUDICIAL NOTICE**<br><br>**(3)    MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed Under Separate Cover:*<br><br>**(4)    [PROPOSED] ORDER**<br><br>**Date:    June 5, 2020<br>Time:    10:00 a.m.<br>Crtrm.:  7B<br>Judge:   Andrè Birotte Jr.** |

130508583.2

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

NOTICE OF MOTION ................................................................................... viii

REQUEST FOR JUDICIAL NOTICE ............................................................. xi

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................ 1

III.   LEGAL ARGUMENT ................................................................................ 3

       A.     APPLICABLE LEGAL STANDARDS ................................................ 3

       B.     THE WAITING TIME PENALTIES CLAIM SHOULD BE DISMISSED ............ 4

              1.     The Claim Fails To Comply With Rule 8 Pleading Standards ................................................................................ 5

              2.     Because Section 226.7 Payments Are Not "Wages Earned," The Non-Payment Thereof At Termination Does Not Trigger Liability For Waiting Time Penalties ..................... 7

       C.     PLAINTIFF'S WAGE STATEMENT CLAIM SHOULD BE DISMISSED .......... 11

              1.     The Claim Fails To Comply With Rule 8 Pleading Standards ............................................................................ 12

              2.     Plaintiff Fails To Allege The Requisite Injury .......................... 12

              3.     The Wage Statements Accurately Reported The Wages Paid ....................................................................................... 14

              4.     Section 226.7 Payments Are Not Subject To Reporting .......... 17

       D.     THE UCL CLAIM SHOULD BE DISMISSED IN PART ............................... 19

              1.     The Claim Fails To Satisfy The Rule 8 Pleading Requirements ......................................................................... 19

2.      Plaintiff's UCL Claim Also Fails To The Extent Predicated On Claims That Provide For Remedies That Are Not Recoverable As Restitution Under The UCL ............. 19

E.      THE PAGA CLAIM SHOULD BE DISMISSED IN PART ............................ 21

1.      Plaintiff's PAGA Claim Is Derivative Of His Failed Fifth And Sixth Causes of Action ...................................................... 21

2.      Plaintiff's PAGA Claim Fails To The Extent Predicated On Alleged Violations Of Cal. Lab. Code § 204 ..................... 21

3.      Plaintiff's PAGA Claim Fails To The Extent Predicated On Alleged Violations Of Cal. Lab. Code § 1174 ................... 22

F.      THE REQUEST FOR DECLARATORY RELIEF SHOULD BE DISMISSED ...... 23

G.      FURTHER LEAVE TO AMEND SHOULD BE DENIED ............................... 24

IV.    CONCLUSION ...................................................................................... 25

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aguiar v. Cal. Sierra Exp., Inc.,*
    2012 WL 1593202 (E.D. Cal. May 4, 2012) ...................................................... 24

*Angeles v. U.S. Airways, Inc.,*
    2013 WL 622032 (N.D. Cal. Feb. 19, 2013) ..................................................... 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................... 3, 4, 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................... 3, 4, 5

*Brown v. Wal-Mart Stores, Inc.,*
    2013 WL 1701581 (N.D. Cal. Apr. 18, 2013) ..................................................... 6

*Campbell v. PriceWaterhouseCoopers,*
    2008 WL 3836972 (E.D. Cal. Aug. 14, 2008) .................................................... 20

*Clark v. EmCare, Inc.,*
    2017 WL 1073342 (C.D. Cal. Mar. 21, 2017) ..................................................... 7

*In re CMR Mortg. Fund, LLC,*
    2009 WL 2870114 (N.D. Cal. Sep. 4, 2009) ..................................................... 25

*Corder v. Houston's Rests., Inc.,*
    424 F.Supp.2d 1205 (C.D. Cal. 2006) ............................................................ 8

*Dawson v. Hitco Carbon Composites, Inc.,*
    2017 WL 7806561 (C.D. Cal. Aug. 3, 2017) ..................................................... 18

*Dawson v. HITCO Carbon Composites, Inc.,*
    2017 WL 7806618 (C.D. Cal. Jan. 20, 2017) ..................................... 6, 12, 13, 19

*De La Torre v. Am. Red Cross,*
    2013 WL 5573101 (C.D. Cal. Oct. 9, 2013) ................................................ 13, 14

*Duran v. Maxim Healthcare Servs. Inc.,*
    2018 WL 5915644 (C.D. Cal. Mar. 9, 2018) ..................................................... 23

*Elliot v. Spherion Pac. Work, LLC*,
    572 F.Supp.2d 1169 (C.D. Cal. 2008)....................................................................21

*Farm Credit Servs. v. Am. State Bank*,
    339 F.3d 764 (8th Cir. 2003) ..................................................................................4

*Franke v. Anderson Merchandisers LLC*,
    2017 WL 3224656 (C.D. Cal. July 28, 2017) ........................................................20

*Fuentes v. Maxim Healthcare Services, Inc.*,
    2018 WL 6137619 (C.D. Cal. Aug. 9, 2018) ..........................................................22

*Guerrero v. Halliburton Energy Servs., Inc.*,
    2016 WL 6494296 (E.D. Cal. Nov. 2, 2016) ..............................7, 11, 12, 13, 14

*Guerrero v. Halliburton Energy Servs., Inc.*,
    231 F.Supp.3d 797 (E.D. Cal. Feb. 3, 2017)....................................................20, 21

*Hadjavi v. CVS Pharm., Inc.*,
    2010 WL 7695383 (C.D. Cal. Sept. 22, 2010).......................................................22

*Henryhand v. Digital Systems LLC*,
    2014 WL 11728721 (C.D. Cal. May 19, 2014)................................................11, 18

*Jones v. Spherion Staffing LLC*,
    2012 WL 3264081 (C.D. Cal. Aug. 7, 2012) .........................................8, 11, 18

*Lopez v. Aerotek, Inc.*,
    2015 WL 4504691 (C.D. Cal. July 23, 2015) ..........................................................6

*Nguyen v. Baxter Healthcare Corp.*,
    2011 WL 6018284 (C.D. Cal. Nov. 28, 2011) .............................................7, 8, 18

*Parsittie v. Schneider Logistics, Inc.*,
    2019 WL 8163645 (C.D. Cal. Oct. 29, 2019) .........................................11, 16, 20

*Parsittie v. Schneider Logistics, Inc.*,
    2020 WL 2120003 (C.D. Cal. Apr. 3, 2020).........................................................16

*Parson v. Golden State FC, LLC*,
    2016 WL 1734010 (N.D. Cal. May 2, 2016) .........................................................20

*Pena v. Taylor Farms Pac., Inc.*,
    2014 WL 1665231 (E.D. Cal. Apr. 23, 2014) .......................................................18

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

*Pulido v. Coca Cola Enters., Inc.*,
    2006 WL 1699328 (C.D. Cal. May 25, 2006).........................................................8

*Pyara v. Sysco Corp.*,
    2016 WL 3916339 (E.D. Cal. July 20, 2016)...................................................... 16

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) ...............................................................................3

*Rodriguez v. Old Dominion Freight Line, Inc.*,
    C.D. Cal. Case No. 13-cv-00891 DSF (June 18, 2013) ...................................... 10

*Rubin v. Wal-Mart Stores, Inc.*,
    599 F.Supp.2d 1176 (N.D. Cal. 2009)................................................................ 21

*Ruelas v. Costco Wholesale Corp.*,
    67 F.Supp.3d 1137 (N.D. Cal. 2014).................................................................. 10

*Sanchez v. Aerogroup Retail Holdings, Inc.*,
    2013 WL 1942166 (N.D. Cal. May 8, 2013) ........................................................6

*Sanders v. Old Dominion Freight Line, Inc.*,
    2018 WL 6321631 (C.D. Cal. Sept. 13, 2018)...............................................20, 22

*Sherman v. Schneider Nat'l Carriers, Inc.*,
    2019 WL 3220585 (C.D. Cal. Mar. 6, 2019) ................................................ 15, 17

*Singletary v. Teavana Corp.*,
    2014 WL 1760884 (N.D. Cal. Apr. 2, 2014)........................................ 8, 9, 10, 11

*Soratorio v. Tesoro Refining & Mktg. Co., LLC*,
    2017 WL 1520416 (C.D. Cal. Apr. 26, 2017).................................... 11, 19, 20

*Starr v. Cnty. of Los Angeles*,
    659 F.3d 850 (9th Cir. 2011) ...............................................................................3

*Suarez v. Bank of Am. Corp.*,
    2018 WL 2431473 (N.D. Cal. May 30, 2018) ................................................ 6, 13

*Tavares v. Cargill Inc.*,
    2019 WL 2918061 (E.D. Cal. July 8, 2019)................................................. 13, 23

*In re Wal-Mart Stores, Inc.*,
    505 F.Supp.2d 609 (N.D. Cal. 2007)................................................................. 21

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

*Woo v. Home Loan Grp., L.P.*,
   2007 WL 6624925 (S.D. Cal. July 27, 2007)......................................................20

**State Cases**

*Application Grp., Inc. v. Hunter Grp., Inc.*,
   61 Cal.App.4th 881 (1998)...................................................................................24

*Brewer v. Premier Golf Prop., LP*,
   168 Cal.App.4th 1243 (2008)..................................................................................8

*Brinker Rest. Corp. v. Super. Ct.*,
   53 Cal.4th 1004 (2012)....................................................................................9, 10

*Clark v. Super. Ct.*,
   50 Cal.4th 605 (2010)...........................................................................................19

*Driscoll v. Granite Rock Co.*,
   2011 WL 10366147 (Cal. Super. Ct. Sept. 20, 2011) (vacated on
   other grounds)................................................................................................6, 18

*Gafcon, Inc. v. Ponsor & Assocs.*,
   98 Cal.App.4th 1388 (2002).................................................................................24

*Jolley v. Chase Home Fin., LLC*,
   213 Cal.App.4th 872 (2013).................................................................................24

*Kirby v. Immoos Fire Protection, Inc.*,
   53 Cal.4th 1244 (2012)..........................................................................8, 9, 10, 20

*Korea Supply v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003).........................................................................................19

*Ling v. P.F. Chang's China Bistro, Inc.*,
   245 Cal.App.4th 1242 (2016)...........................................................................9, 10

*Maldonado v. Epsilon Plastics, Inc.*,
   22 Cal.App.5th 1308 (2018), *review denied* (Aug. 22, 2018).......................15, 16

*Naranjo v. Spectrum Security Servs., Inc.*,
   40 Cal.App.5th 444 (2019), *as modified on denial of reh'g* (Oct. 10,
   2019), *review granted* (Jan. 2, 2020)...........................................................8, 18, 21

*Price v. Starbucks Corp.*,
   192 Cal.App.4th 1136 (2011)........................................................................13, 14, 21

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*Soto v. Motel 6 Operating, L.P.*,
    4 Cal.App.5th 385 (2016) ............................................................. 15, 17

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................. 2

Cal. Civ. Proc. Code § 1021.5 .................................................................... 2

Cal. Lab. Code § 201 ................................................................................. 7

Cal. Lab. Code § 203 .................................................................. 3, 5, 10, 11

Cal. Lab. Code § 204 ........................................................................ 21, 22

Cal. Lab. Code § 226 ............................... 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21

Cal. Lab. Code § 226(a) ..................................................................... 15, 17

Cal. Lab. Code § 226(e) .................................................................. 12, 13, 17

Cal. Lab. Code § 226(e)(1) ....................................................................... 13

Cal. Lab. Code § 226(e)(2)(B) ................................................................... 13

Cal. Lab. Code § 226.7 .......................... 5, 7, 8, 9, 10, 11, 17, 18, 19, 20, 21

Cal. Lab. Code § 226.7(b) ........................................................................... 8

Cal. Lab. Code § 1174 ................................................................... 3, 22, 23

Cal. Lab. Code § 2698 ................................................................................. 1

**Federal Rules**

Fed. R. Civ. P. 8 .......................................................... 1, 3, 4, 5, 12, 19, 21

Fed. R. Civ. P. 12(b)(6) ................................................................ 1, 2, 3, 25

**Local Rules**

L.R. 7-3 ....................................................................................................... 2

**State Rules**

Cal. R. Ct. 8.1115 ....................................................................................... 8

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

## <u>NOTICE OF MOTION</u>

**TO PLAINTIFF DERIK DULEY AND HIS COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on June 5, 2020, at 10:00 a.m., in Courtroom 7B of the United States District Court, Central District of California, located at 350 West First Street, Los Angeles, CA 90012, Defendant Centerra Group, LLC ("CGL" or "Defendant") will and hereby does move the Court to dismiss portions of Plaintiff's Third Amended Complaint ("TAC") pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that:

1.  Plaintiff's purported **Fifth Cause of Action** for failure to timely pay wages at separation and/or waiting time penalties pursuant to Cal. Labor Code §§ 201-203 fail as a matter of law because:

    a.  Plaintiff's TAC fails to set forth sufficient facts regarding an alleged willful failure to pay all wages due; and/or

    b.  Section 226.7 payments for missed or non-compliant meal and rest breaks do not constitute "wages earned" for purposes of triggering the final pay requirements; and

2.  Plaintiff's purported **Sixth Cause of Action** for failure to provide accurate, itemized wage statements in violation of Cal. Lab. Code § 226(a) ("Section 226(a)") fails as a matter of law because:

    a.  Plaintiff fails to allege that his wage statements were inaccurate as to the payment of wages actually paid to him; and/or

    b.  The TAC fails to set forth sufficient facts that Plaintiff suffered any cognizable injury; and/or

    c.  The claim fails to comply with the pleading requirements of Rule

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

8 with respect to whether any purported violation was knowing and intentional; and/or

    d.    Section 226.7 payments are not subject to reporting under Section 226(a); and

3.    Plaintiff's purported **Seventh Cause of Action** for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), fails as a matter of law *in part* because:

    a.    It is derivative of the factually and legally insufficient allegations of Plaintiff's Fifth and Sixth Causes of Action that also fail as a matter of law; and/or

    b.    To the extent such penalties are being sought based on an alleged failure to provide legally-compliant meal and rest breaks under Section 226.7 or a failure to provide accurate itemized wage statements under Section 226, the remedies for such violations are not subject to restitution and, therefore, are not recoverable under the UCL; and

4.    Plaintiff's purported **Eighth Cause of Action** for civil penalties pursuant to the California Labor Code Private Attorneys General Act, Cal. Lab. Code § 2698 et seq. ("PAGA"), fails as a matter of law *in part* because:

    a.    It is derivative of the factually and legally insufficient allegations of Plaintiff's Fifth and Sixth Causes of Action that also fail as a matter of law; and/or

    b.    Plaintiff's PAGA claim for civil penalties based on an alleged

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

violation of Cal. Lab. Code § 1174 fails to comply with the pleading requirements of Rule 8; and/or

    c.    Plaintiff's PAGA claim for civil penalties based on an alleged violation of Cal. Lab. Code § 204 fails to comply with the pleading requirements of Rule 8; and

5.    Plaintiff's **request for declaratory relief** should be dismissed because such relief is not available to redress past wrongs.

On April 29, 2020, CGL initiated the meet and confer process with Plaintiff regarding the grounds for this Motion in accordance with the requirements of Local Rule 7-3.  However, the parties were unable to resolve the defects in Plaintiff's claims in the TAC, thus necessitating the filing of this Motion.

This Motion is based on this Notice, the accompanying Request for Judicial Notice and Memorandum of Points and Authorities, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence, and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

DATED: May 6, 2020           **MCGUIREWOODS LLP**

           By:     /s/ Sabrina A. Beldner
                   Sabrina A. Beldner, Esq.
                   Sylvia J. Kim, Esq.
                   Amy E. Beverlin, Esq.
                   Ashley R. Li, Esq.

                  Attorneys for Defendant
                  CENTERRA GROUP. LLC

## <u>REQUEST FOR JUDICIAL NOTICE</u>

**TO THE HONORABLE ANDRÈ BIROTTE JR., UNITED STATES DISTRICT JUDGE, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Pursuant to Fed. R. Evid. 201(b) and (d), Defendant Centerra Group, LLC ("CGL" or "Defendant") hereby requests that the Court take judicial notice of the following documents attached hereto in support of its Motion to Dismiss Portions of Plaintiff's Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"):

<u>Exhibit A</u>:    Excerpts of the transcript of the Industrial Welfare Commission ("IWC") Public Hearing of June 30, 2000, available at URL http://www.dir.ca.gov/IWC/PUBHRG6302000.pdf.

<u>Exhibit B</u>:    June 18, 2013 Order entered in *Rodriguez v. Old Dominion Freight Line, Inc.*, United States District Court, Central District of California Case No. 13-cv-00891 DSF (RZx), Dkt. #31 therein.

<u>Exhibit C</u>:    The Assembly Committee on Labor Relations, Analysis of A.B. No. 3731 (1976) from the legislative history on Cal. Lab. Code § 226.

<u>Exhibit D</u>:    The California Department of Industrial Relations Division of Labor Standards Enforcement ("DLSE") Opinion Letter Re: Electronic Itemized Wage Statements (July 6, 2006).

CGL's request is made pursuant to Fed. R. Evid. Rule 201(b) and (d) on the grounds that the foregoing documents are proper subjects for judicial notice because they are records of this Court and/or the Superior Court of the State of California, the California Legislature, the California Department of Industrial Relations and the

California Division of Labor Standards Enforcement, and/or their contents are not subject to reasonable dispute and they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

DATED: May 6, 2020                    **McGuireWoods LLP**


                              By:    /s/ Sabrina A. Beldner
                              _____
                                   Sabrina A. Beldner, Esq.
                                   Sylvia J. Kim, Esq.
                                   Amy E. Beverlin, Esq.
                                   Ashley R. Li, Esq.

                                   Attorneys for Defendant
                                   CENTERRA GROUP, LLC

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Despite having amended his pleading *three times*, certain claims in Plaintiff's Third Amended Complaint ("TAC") *still* fail as a matter of law because, in contravention of Fed. R. Civ. P. 8 ("Rule 8"), they fail to allege sufficient facts to support a cognizable legal theory and/or they suffer from myriad substantive defects. Specifically, Plaintiff's purported claims for waiting time penalties and inaccurate wage statements are premised almost entirely on conclusory recitations of the elements of each claim, which lack the necessary factual specificity.  Further, while his derivative statutory claims predicated thereon necessarily fail for the same reasons, his claim for civil penalties under the Private Attorneys General Act, Cal. Lab. Code § 2698, *et seq.* ("PAGA") *also* suffers from substantive defects that necessarily require dismissal thereof.  Therefore, as discussed more fully herein, certain of Plaintiff's claims still fail to satisfy the pleading requirements of Rule 8— and his failure to sufficiently plead his claims on his **third attempt** strongly suggests that he can **never** properly plead such claims.  As such, Defendant Centerra Group, LLC's ("Defendant" or "CGL") Motion to Dismiss (the "Motion") portions of the TAC should be granted in its entirety and **without leave to amend**.

## II.    STATEMENT OF FACTS

On November 25, 2019, Plaintiff filed his First Amended Complaint ("FAC"). Dkt. #11.  Following the requisite meet and confer, CGL moved to dismiss and/or strike Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(f).  Dkt. #14. Plaintiff opposed the motion and purported to seek sanctions against CGL therefor. Dkt. #16.  On March 18, 2020, the Court entered its Order [1] Granting Defendant's Motion to Dismiss, [2] Granting in Part and Denying in Part Defendant's Motion to Strike, [3] Denying Plaintiff's Request for Sanctions (the "MTD Order").  Dkt. #23.

In its MTD Order, the Court granted CGL's motion to dismiss the FAC *in its entirety* with leave to amend on the grounds that *each* cause of action asserted by

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

Plaintiff in his FAC failed to state a claim upon which relief could be granted.  *See id.*, pp. 4-10.  More specifically, it found that Plaintiff failed to plead specific factual allegations necessary to state each cause of action asserted in the FAC.  *See id.* at 5:12-15, 6:15-20, 7:14-17, 8:9-12, 9:12-15; *see also id.* at 10:1-2, 10:21-24 (holding that Plaintiff's derivative claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* [the "UCL"] and PAGA also failed).[1]  The Court denied Plaintiff's purported request for sanctions *in toto*.  *See id.* at 13:23-14:7.

On April 1, 2020, Plaintiff filed his Second Amended Complaint ("SAC").  Dkt. #24.  On April 7, 2020, CGL sent a letter to Plaintiff pursuant to L.R. 7-3 that detailed the grounds upon which detailed the grounds for CGL's intended motion to dismiss and/or strike Plaintiff's SAC.  *See* Dkt. #25 at 1:21-24.  In meeting and conferring regarding CGL's April 7th letter, the parties agreed that Plaintiff would file a *third* amended complaint to resolve certain defects in the SAC as identified by CGL, and stipulated to the same.  *See id.* at 1:21-2:6.  The Court granted the parties' stipulation, and, on April 15, 2020, Plaintiff filed his TAC.  Dkt. #26, #27.

In his TAC, Plaintiff alleges that he was formerly employed by CGL has a "non-exempt or hourly-paid employee."  *See* TAC, ¶ 10.  He purports to allege the following claims on behalf of himself and other putative class members ("PCMs"): (1) failure to pay overtime wages; (2) failure to provide or pay for missed or non-compliant meal breaks; (3) failure to provide or pay for missed or non-compliant rest breaks; (4) failure to pay minimum wages; (5) failure to pay all wages upon termination and/or waiting time penalties; (6) failure to furnish accurate itemized

---

[1]  The Court also denied CGL's motion to strike certain allegations from the FAC on the grounds that CGL failed to show how those allegations were, per Rule 12(f), "redundant, immaterial, impertinent, or scandalous matter"; to strike Plaintiff's requests for attorneys' fees under Cal. Civ. Proc. Code § 1021.5; and to strike Plaintiff's requests for injunctive and declaratory relief on the grounds that a motion to strike was not the proper vehicle for such a request.  *See* Dkt. #23 at 11: 12-13, 11:22-23, 12:5-7, 12:14-16.  It granted in part and denied in part CGL's motion to strike Plaintiff's claims for actual, consequential and incidental losses and damages. *See id.* 13:9-22.

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1  wage statements and/or pay inaccurate wage statement penalties; (7) violation of the

2  UCL; and (8) civil penalties under PAGA.[2]  *See generally* TAC.

3      Plaintiff seeks recovery of unpaid wages, missed meal and rest break

4  premiums, wage statement penalties, waiting time penalties, restitution, declaratory

5  relief, pre-judgment interest, attorney's fees and costs.  *Id.* at Prayer for Relief.

## III.  LEGAL ARGUMENT

### A.  APPLICABLE LEGAL STANDARDS

8      Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a motion to dismiss for

9  failure to state a claim can be based on the failure to allege a cognizable legal theory

10  or the failure to allege sufficient facts under a cognizable legal theory.  *See* Fed. R.

11  Civ. P. 12(b)(6); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th

12  Cir. 1984).  Under Fed. R. Civ. P. 8 ("Rule 8"), to withstand a motion to dismiss

13  pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to

14  raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550

15  U.S. 544, 555 (2007) ("*Twombly*"); *id.* at 559 (requiring facts sufficient to raise a

16  "plausible entitlement to relief"); *see also Starr v. Cnty. of Los Angeles*, 659 F.3d

17  850, 851 (9th Cir. 2011) ("Rule 8 … governs the pleading standard in all civil actions

18  and proceedings in the United States district courts." (int. quot. marks omitted)).

19      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

20  relief' requires more than labels and conclusions, and *a formulaic recitation of the*

21  *elements of a cause of action will not do*."  *Twombly*, 550 U.S. at 555 (emph. added).

22  "Threadbare recitals of the elements of a cause of action, supported by mere

23  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

24  ("*Iqbal*").  To that point, pleadings that contain "no more than conclusions ... are not

25  entitled to the assumption of truth" otherwise applicable to complaints on a motion to

---

27  [2] Among other amendments, Plaintiff's TAC dropped his request for injunctive

28  relief and his request for restitution under the UCL for CGL's purported violations of
   Cal. Lab. Code §§ 203 and 1174.

dismiss. *Id.* at 679. The, the Court is "free to ignore legal conclusions, *unsupported conclusions*, unwarranted inferences and *sweeping legal conclusions cast in the form of factual allegations*." *Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (emph. added).

A two-pronged approach is used to analyze the sufficiency of a complaint under Rule 8: (1) the Court should first identify and disregard conclusory allegations, which are not entitled to the assumption of truth; and (2) it should then determine whether the remaining allegations, if taken as true, present a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the ***reasonable inference*** that the ***defendant is liable for the misconduct*** alleged." *Id.* at 678 (emph. added). Therefore, a complaint must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly,* 550 U.S. at 556, n.3. "[W]here the well-pleaded ***facts*** do not permit the court to infer more than the ***mere possibility of misconduct***, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (emph. added).

## B.   THE WAITING TIME PENALTIES CLAIM SHOULD BE DISMISSED

In its MTD Order, the Court granted CGL's motion to dismiss Plaintiff's purported Fifth Cause of Action for waiting time penalties on the grounds that "Plaintiff's First Amended Complaint fail[ed] to plead specific factual allegations showing when his employment with Defendant ended, and what wages Plaintiff wanred that were unpaid." Dkt. # 23 at 8:9-12; *see also id.* at 8:5-8. Plaintiff's TAC now alleges that he was "discharged" in October 2018. TAC, ¶ 10. The TAC further alleges that "Plaintiff was not paid at the time Defendant ended his employment in October 2018 all wages earned and unpaid throughout his employment, including, but not limited to, minimum wages and overtime wages for time worked off-the-clock and meal and rest period premium payments for missed, short, late, and/or interrupted, meal and rest periods." *Id.*, ¶ 88.

Despite these amendments, Plaintiff's purported Fifth Cause of Action still fails as a matter of law because it: (1) fails to comply with Rule 8's pleading standards, and (2) impermissibly seeks waiting time penalties for CGL's alleged failure to pay meal or rest break premiums under Cal. Lab. Code § 226.7 ("Section 226.7"). As such, for the reasons discused more fully herein, his waiting time penalties claim should be dismiss *without leave to amend*.

### 1. The Claim Fails To Comply With Rule 8 Pleading Standards

Cal. Labor Code § 203 ("Section 203") provides that "[i]f an employer *willfully* fails to pay ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid ... for [no] more than 30 days." Cal. Lab. Code § 203. As such, in order to state a claim under Section 203, Plaintiff must allege ***facts*** demonstrating that CGL *willfully* failed to timely pay final wages upon separation. But the TAC alleges nothing more than a formulaic recitation of the statutory language, which is impermissible under *Twombly* and *Iqbal*.

With respect to Section 203's willfulness prong, the TAC alleges *only* that, "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members their wages, earned and unpaid, within seventy-two (72) hours of Plaintiff and the other class members leaving Defendants' employ," TAC, ¶ 86, which is premised upon Plaintiff's *belief* that "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation," *id.*, ¶ 33.[3] Accordingly, although Plaintiff is required to plead ***facts*** showing that CGL "willfully" failed to pay all

---

[3] Similar conclusory allegations are found in Paragraph 35 of the TAC. *See* TAC, ¶ 35 ("Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that they had a duty to compensate Plaintiff and the other class members pursuant to California law, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and the other class members that they were properly denied wages, all in order to increase Defendants' profits.").

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

wages due at termination, the TAC does not allege *any* facts that could plausibly suggest any such "willful" violation by CGL.  The TAC merely *concludes* that CGL "willfully" failed to pay him and other PCMs their wages upon termination, but it "fails to support this conclusory allegation with factual support." *Brown v. Wal-Mart Stores, Inc.*, 2013 WL 1701581, at *8 (N.D. Cal. Apr. 18, 2013).[4]

The mere failure to make payments at termination—the right to which is the subject of a good faith dispute—cannot, as a matter of law, establish a "willful" failure to timely pay all terminal wages.  *See, e.g.*, *Driscoll v. Granite Rock Co.*, 2011 WL 10366147 (Cal. Super. Ct. Sept. 20, 2011) (vacated on other grounds) ("[P]roof of violation of one statute does not prove a knowing and intentional violation of another.").  For example, in *Soratorio v. Tesoro Refining & Marketing Co., LLC*, the plaintiff's Section 203 claims were dismissed *without leave to amend* where he attempted to plead "willfulness" based on the allegation that "[a]lthough Plaintiff and certain members of the proposed CLASS brought these issues of untimely payment upon separation of employment with [Tesoro], all such complaints proved fruitless." 2017 WL 8220415, *3 (C.D. Cal. Sept. 11, 2017) (Fitzgerald, J.).  "This unadorned allegation, without more, [did] not plausibly suggest willfulness" because the complaint offered "no information about when Plaintiff and 'certain members of the proposed class' complained, how they complained (*e.g.*, in-person, telephone, email),

---

[4] *See also Suarez v. Bank of Am. Corp.*, 2018 WL 2431473, at *9 (N.D. Cal. May 30, 2018) (dismissing  waiting time penalty claim where "the Complaint does not contain facts alleging [defendant] acted willfully."); *Dawson v. HITCO Carbon Composites, Inc.*, 2017 WL 7806618, at *4 (C.D. Cal. Jan. 20, 2017) (Gutierrez, J.) (dismissing Section 203 claim where plaintiff alleged that "Defendants intentionally and willfully failed to pay Plaintiff and other class members … their wages, earned and unpaid, within seventy-two hours of their leaving Defendants' employ"); *Lopez v. Aerotek, Inc.*, 2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015) (Carney, J.) (dismissing claim based on allegation that "Defendants willfully failed to pay their workers accrued wages due promptly upon termination"); *Brown*, 2013 WL 1701581, at *5 n.4 ("[C]onclusory allegations of willfulness, without further factual support, are insufficient"); *Sanchez v. Aerogroup Retail Holdings, Inc.*, 2013 WL 1942166, *14 (N.D. Cal. May 8, 2013) (granting motion to dismiss because "Plaintiff has not alleged facts showing that [Defendant] *willfully* refused to pay Plaintiff her wages after she was discharged or quit" (emph. added)).

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1    who they complained to, or the response(s) they received." *Id.*

2        Here, Plaintiff's TAC *still* contains no facts to establish that any alleged failure

3    to pay terminal wages was "willful."  As such, Plaintiff has failed to state a plausible

4    claim for relief under Section 203.  *See, e.g.*, *Clark v. EmCare, Inc.*, 2017 WL

5    1073342, *5-6 (C.D. Cal. Mar. 21, 2017) (Wright, II, J.) (dismissing Section 203

6    claim where "[p]laintiff d[id] not provide any facts in support of her argument that

7    [defendant] willfully failed to compensate her upon discharge" because "[a]llegations

8    that repeat the statutory language are insufficient"); *Guerrero v. Halliburton Energy*

9    *Servs., Inc.*, 2016 WL 6494296, at *8 (E.D. Cal. Nov. 2, 2016) (dismissing Section

10   203 claim that alleged defendant's violation was "willful" in that defendant "knew the

11   wages to be due, but failed to pay them" on the grounds that plaintiff failed to plead

12   facts as to how their non-payment was willful).

13           **2.      Because Section 226.7 Payments Are Not "Wages Earned,"**
             **The Non-Payment Thereof At Termination Does Not Trigger**
14           **Liability For Waiting Time Penalties**

15       Plaintiff's Section 203 claim also fails to the extent it relies on a failure to

16   make Section 226.7 meal and rest period payments at termination because Section

17   226.7 payments do not constitute "wages earned" under Cal. Labor Code § 201

18   ("Section 201") for purposes of incurring waiting time penalties under Section 203.

19   Section 201 provides, in pertinent part, that "[i]f an employer discharges an

20   employee, the *wages earned* and unpaid at the time of discharge are due and payable

21   immediately."  Cal. Lab. Code § 201 (emph. added).  But, as discussed herein,

22   Section 226.7 payments for missed or non-compliant meal and rest breaks are not

23   "wages earned" for purposes of triggering Section 203 liability.

24       As the California Supreme Court first acknowledged in *Murphy v. Kenneth*

25   *Cole Productions, Inc*., the Section 226.7 payment[ ] … compensates the employee

26   for events ***other than*** time spent working."  40 Cal.4th 1094, 1113 (2007) (emph.

27   added); *see Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284, *8 (C.D. Cal.

28   Nov. 28, 2011) (Carney, J.) (citing *Murphy* for proposition that "missed meal breaks

130508583.3                                       7

must be compensated under Section 226.7 and is properly considered liquidated damages, not wages earned"). However, to the extent *Murphy* characterized the Section 226.7 payment as a "premium *wage*," it did so narrowly for statute of limitations purposes **only**. *See Naranjo v. Spectrum Security Servs., Inc.*, 40 Cal.App.5th 444, 456 (2019), *as modified on denial of reh'g* (Oct. 10, 2019), *review granted* (Jan. 2, 2020)[5] (noting *Murphy*'s holding that "premium pay … is a wage and not a penalty *for statute of limitations purposes*" (emph. added)).[6] Indeed, the court concurrently recognized that Section 226.7 payments are "an amount of compensation" for "*noneconomic injuries*." *Murphy*, 40 Cal.4th at 1113.[7]

To that point, Section 226.7 payments do not in any way correlate to the amount of time that an employee actually works through a meal or rest break. Rather, the same fixed sum of one full hour of pay is owed, regardless of whether the employee works through only a portion of the meal or rest break or through the entire break. *See* Cal. Lab. Code § 226.7(b); *see also Corder v. Houston's Rests., Inc.*, 424 F.Supp.2d 1205, 1208 (C.D. Cal. 2006) (Carney, J.) (stating that Section 226.7 "does not compensate an employee for additional services rendered"); *Pulido v. Coca Cola Enters., Inc.*, 2006 WL 1699328, *8 (C.D. Cal. May 25, 2006) (Phillips, J.) (Section 226.7 is "punitive" with "no correlation to the employee's actual labor").

---

[5] *See* Cal. R. Ct. 8.1115 (pending review, published appellate decisions remain persuasive authority).

[6] *See also Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1256 (2012) ("[W]e held in *Murphy* that [the Section 226.7 payment] is a 'wage' **for purposes of determining what statute of limitations applies** to section 226.7 claims." (emph. added)); *Singletary v. Teavana Corp.*, 2014 WL 1760884, at *4 (N.D. Cal. Apr. 2, 2014) (holding that "*Kirby* clarified that the wrong at issue in Section 226.7 is the non-provision of [meal] breaks, not a denial of wages" and referencing "*Kirby's* characterization of Section 226.7's payment as penalties, not wages"); *Jones v. Spherion Staffing LLC*, 2012 WL 3264081, at *9 (C.D. Cal. Aug. 7, 2012) (Kronstadt, J.) ("[T]he later decision in *Kirby* demonstrated that *Murphy's* holding is limited.").

[7] *See also Nguyen*, 2011 WL 6018284, at *8 (A Section 226.7 payment "is properly considered *liquidated damages, not wages earned* ….") (emph. added); *Brewer v. Premier Golf Prop., LP*, 168 Cal.App.4th 1243, 1254 (2008) (remedies for missed meal and rest breaks "include an award in the nature of *liquidated damages* under section 226.7" (emph. added)).

The California Supreme Court spoke to this issue in *Kirby* and **expressly** acknowledged that Section 226.7 payments are more properly characterized exclusively as damages and **_not as wages_** for work performed. Specifically, the court held that the Section 226.7 payment is intended to pay employees "for the nonprovision of meal and rest periods," as distinguished from payments for work performed during such periods:

> Section 226.7 is **not aimed at protecting or providing employees' wages**. Instead, the statute is primarily concerned with ensuring the health and welfare of employees by requiring that employers provide meal…periods as mandated by the IWC. [Citation] When an employee sues for a violation of *section 226.7*, he or she is suing because an employer has allegedly "require[d] [the] employee to work during [a] meal…period mandated by an applicable order of the Industrial Welfare Commission." [Citation] In other words, **a section 226.7 action is brought for the nonprovision of meal and rest periods, not for the "nonpayment of wages**."

*Id.* at 1255 (brackets in orig.) (emph. added); *see Singletary*, 2014 WL 1760884, at *4 ("[Section 203] demonstrates that the wrong [it] is concerned with is the prompt payment of wages to a terminated employee. *Kirby* clarified that the wrong at issue in Section 226.7 is the non-provision of … breaks, not a denial of wages.")

The foundation for distinguishing between "wages" that an employee *earns* for *performing work*, on the one hand, and the "premium pay" under Section 226.7 that compensates for a *non-compliant meal or rest break*, on the other, as set out in *Kirby*, was laid out in *Brinker*:

> The employer that refuses to relinquish control over employees during an owed meal period violates the duty to provide the meal period and owes compensation [and a Section 226.7 payment] for hours worked. The employer that relinquishes control but nonetheless knows or has reason to know that the employee is performing work during the meal period, has not violated its meal period obligations [and owes no Section 226.7 payment], but nonetheless owes regular compensation to its employees for time worked.

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal.4th 1004, 1040 n.19 (2012). Indeed, well after *Brinker* and *Kirby* were decided the California Court of Appeal decided *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242 (2016), and in that decision

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

distinguished between Section 226.7's *penalty* for the non-provision of meal or rest breaks and the non-payment of *wages* that triggers Section 203 liability:

> We understand that the remedy for a section 226.7 violation is an extra hour of pay, but *the fact that the remedy is measured by an employee's hourly wage does not transmute the remedy into a wage as that term is used in section 203*, which authorizes penalties to an employee who has separated from employment without being paid.

*Id.* at 1261 (2016) (emph. added).[8]  Thus, pursuant to *Murphy*, *Brinker*, *Kirby*, and *Ling*, Section 226.7 payments are akin to *damages*, are not compensation for work performed, and are not "wages" as that term is used in Section 203.

On this basis, several district courts have held that Section 203 waiting time penalties are not available based on a failure to make Section 226.7 payments at termination.  As one district court held, "*Kirby* forecloses the possibility of an action under [S]ections 201 and 203 for the nonpayment of wages" and "makes clear that an employer who owes an employee a premium wage under [Section] 226.7 is not also liable for a violation of § 203."  *See* RJN, Exh. B, *Rodriguez v. Old Dominion Freight Line, Inc.*, C.D. Cal. Case No. 13-cv-00891 DSF (RZx) (June 18, 2013) (Fischer, J.), at p. 8.  Similarly, in *Singletary*, 2014 WL 1760884, at *4, the court recognized that "*Kirby* clarified that the wrong at issue in Section 226.7 is the non-provision of [meal] breaks, not a denial of wages."  As such, that case – like *this* case – fell "under *Kirby's* characterization of Section 226.7's payment as penalties, not

---

[8] Section 226.7 payments have also been characterized as "penalties."  During the June 30, 2000 hearing at which the California Industrial Welfare Commission ("IWC") adopted the "hour of pay" remedy for meal break violations, IWC Commissioner Barry Broad clarified that the meal break violation payments are "penalties" intended to "encourage employers not to" deprive employees of meal breaks.  *See* Request for Judicial Notice ("RJN"), Exh. A (IWC Public Hearing Transcript (June 30, 2000)), at p. 30.  Indeed, "penalty" (as opposed to "wage") was the *only* term used throughout the hearing to describe the payments.  To that end, in *Ruelas v. Costco Wholesale Corp.,* 67 F.Supp.3d 1137, 1143 & n. 37 (N.D. Cal. 2014), the court acknowledged that the legislative history of Section 226.7 "clearly indicates that the payment was meant to be a penalty" and recognized that "[a]dding a penalty component to the Labor Code will support the underlying purpose of meal periods by encouraging employers to comply with the meal period provisions.") (quoting Department of Finance Enrolled Bill Report Deferred to Department of Industrial Relations, Bill No. AB 2509 at 9).

1    wages." *Id.* Other California district courts have similarly followed suit.[9]

2        Accordingly, Plaintiff cannot base his claim under Section 203 for the alleged

3    non-payment of wages on an alleged failure to pay Section 226.7 penalties during his

4    employment. *See Singletary*, 2014 WL 1760884, at *4; *Jones*, 2012 WL 3264081, at

5    *9. Therefore, his Section 203 claim fails on this basis as well.

6        ## C.    PLAINTIFF'S WAGE STATEMENT CLAIM SHOULD BE DISMISSED

7         In its MTD Order, the Court granted CGL's motion to dismiss Plaintiff's

8    purported Sixth Cause of Action for violation of Cal. Lab. Code § 226 ("Section

9    226") on the grounds that "Plaintiff's First Amended Complaint fail[ed] to provide

10   any factual allegations as to at least one specific wage statement that was deficient in

11   the alleged ways." Dkt. # 23 at 9:12-15. The Court also found that Plaintiff's TAC

12   proffered only "bald allegations" that "parrot[ed] the statutory language of [Section

13   226]." *Id.* at 9:4-11. The TAC now alleges that "the wage statement pertaining to

14   Plaintiff July 23, 2018 workweek "failed to include the total number of hours worked

15   off-the-clock as alleged above and the applicable hourly rate for those hours." TAC,

16   ¶ 95. It further alleges that because Plaintiff and other PCMs were allegedly

17   "instructed" to don protective gear prior to clocking in, CGL "knowingly and

18   intentionally instructed" them "to work off-the-clock," but "did nothing to ensure …

19   that this time worked was accurately recorded on the wage statements." *Id.* In other

20   words, the "inaccuracy" identified by Plaintiff is the alleged failure to list on his wage

21   _____

22       [9] *See, e.g., Parsittie v. Schneider Logistics, Inc.*, 2019 WL 8163645, *7 (C.D. Cal. Oct. 29. 2019) (Fitzgerald, J.) (expressing "skepticism" that a plaintiff could

23   base his waiting time penalties claim on his claims for meal and rest period violations because "federal and state authorities … ***consistently*** hold that 'wages' awarded

24   under section 226.7 do not count as 'wages' under section 203" (emph. added); *Jones*, 2012 WL 3264081, at *9 (holding that "Plaintiff cannot advance a claim for

25   … failure to pay wages due upon termination based solely on alleged violations of [S]ection 226.7."); *Henryhand v. Digital Systems LLC*, 2014 WL 11728721, *14

26   (C.D. Cal. May 19, 2014) (Kronstadt, J.) (same); *Guerrero I*, 2016 WL 6494296 at *8 (same); *see also, e.g., Soratorio v. Tesoro Refining & Mktg. Co., LLC*, 2017 WL

27   1520416, *3 (C.D. Cal. Apr. 26, 2017) (Fitzgerald, J.) ("*Soratorio II*") (noting that the plaintiff conceded that section 226.7 penalties were not applicable to section 203

28   waiting time penalties because they are not wages earned).

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1    statements unrecorded hours that he supposedly worked.

2    Despite these amendments, Plaintiff's purported Sixth Cause of Action still

3    fails as a matter of law because: (1) the TAC fails to allege sufficient facts to

4    plausibly suggest that CGL committed a knowing and intentional violation of Section

5    226 (as opposed to a purportedly "knowing and intentional" violation of some other

6    Labor Code section); (2) the claim fails to comply with the Rule 8 requirements

7    inasmuch as it fails to allege sufficient facts (rather than just bare conclusions) to

8    plausibly suggest Plaintiff or any PCM suffered a cognizable injury; and (3) the wage

9    statements issued to Plaintiff accurately reported any wages actually paid to him

10   during each pay period in which he earned wages.  As such, his inaccurate wage

11   statement claim should be dismissed *without leave to amend*.

### 1.    The Claim Fails To Comply With Rule 8 Pleading Standards

13   To seek statutory penalties for any alleged violation of the itemized wage

14   statement requirements of Section 226, Plaintiff must allege *facts* supporting the

15   essential element that CGL committed "*knowing* and *intentional* failure[s] . . . to

16   comply" therewith.  Cal. Lab. Code § 226(e) (emph. added).  Here, Plaintiff alleges

17   ***no facts*** to plausibly suggest that CGL provided inaccurate wage statements or that it

18   did so ***knowingly*** and ***intentionally***.  Instead, the TAC's new allegations suggest only

19   that CGL "knowingly and intentionally" required Plaintiff and other PCMs to perform

20   off-the-clock work in requiring them to don protective gear "and be ready to work"

21   prior to clocking-in.  *See* TAC, ¶ 95.  Plaintiff's mere allegation that CGL *then*

22   "knowingly and intentionally" failed to include certain work hours on the wage

23   statement that Plaintiff did not himself record as hours worked is insufficient to state a

24   claim under Section 226.  *See Guerrero,* 2016 WL 6494296, at *7; *see also Dawson*,

25   2017 WL 7806618, at *6 (conclusory allegation that a violation was committed

26   "intentionally and willfully" was insufficient).

### 2.    Plaintiff Fails To Allege The Requisite Injury

28   Plaintiff also fails to properly allege the other required element to impose

penalties: that he "suffer[ed] *injury* as a result of" any such violation. Cal. Lab. Code § 226(e)(1) (emph. added). Plaintiff must allege facts to show that he has suffered a "cognizable injury" amounting to *something more than not receiving a compliant itemized wage statement. See Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1142 (2011) (deprivation of information "standing alone is not a cognizable injury").[10] A cognizable injury is deemed to exist ***only*** when it is impossible to "promptly and easily determine from the wage statement *alone* … the amount of gross wages or net wages ***actually*** *paid* to the employee ***during the pay period***." Cal. Lab. Code § 226(e)(2)(B) (emph. added).

For example, in *De La Torre v. American Red Cross,* 2013 WL 5573101 (C.D. Cal. Oct. 9, 2013) (Pregerson, J.), the plaintiff's Section 226 claim was dismissed because she failed to sufficiently allege a cognizable injury under Section 226(e). While the plaintiff alleged that her bonus payments were not included on her paychecks, she did not allege that she was unable to "promptly and easily determine" from the wage statement "the amount of gross wages or net wages actually *paid to her during the pay periods at issue.*" *Id.* at *6 (emph. added). Consequently, the Court held that the plaintiff had "not alleged actual injury resulting from the inaccuracy on her wage statement as required by Section 226." *Id.*

Here, Plaintiff's allegations regarding his purported "injury" have not substantively changed between his FAC and his TAC. *Compare* Dkt. #11, ¶ 84 *with*

---

[10] *See also Tavares v. Cargill Inc.*, 2019 WL 2918061, at *6 (E.D. Cal. July 8, 2019) ("This injury requirement however, 'cannot be satisfied simply because one of the nine itemized requirements . . . is missing from a wage statement.'"); *Suarez*, 2018 WL 2431473, at *12-13 (holding that the "deprivation of one of the itemized requirements in section 226(a) does not, in and of itself, constitute a cognizable injury"); *Dawson*, 2017 WL 7806618, at *5 ("The deprivation of information is not itself sufficient to establish a cognizable injury."); *Guerrero*, 2016 WL 6494296 at *6 ("The mere fact that the information was missing from the wage statement is not a cognizable injury [under Section 226].""); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, *10 (N.D. Cal. Feb. 19, 2013) ("A plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is not sufficient.").

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Dkt. #27, ¶ 95.  To that point, he alleges (as he always has) that he and other PCMs "experienced actual injury" because CGL failed to include the "correct" total number of hours worked and the "correct" hourly rate on wage statements issued to Plaintiff and PCMs.  TAC, ¶ 95.  Notably, however, he does **not** allege that he or the PCMs were unable to determine from the wage statements *alone* the amount of wages actually paid to them or even the wages they claim to be owed.  *See De La Torre*, 2013 WL 5573101, at *6.  Instead, he proffers a list of "injuries"—for which he offers **no** supporting factual allegations.  *See* TAC at 23:22-24:4.[11]

At bottom, Plaintiff's "injury" allegations are conclusory and lack specificity, and therefore fall short of providing any factual content that allows the Court to draw the reasonable inference that he and other PCMs suffered a cognizable injury.  *See Guerrero*, 2016 WL 6494296, at *6-7; *see also De La Torre*, 2013 WL 5573101, at *6 (dismissing Section 226 claim where plaintiff did not "properly allege that her paycheck was such that she could not 'promptly and easily determine' from the wage statement the amount of gross wages or net wages *actually paid to her* during the pay periods at issue).  Therefore, Plaintiff cannot state a claim under Section 226.

### 3.    The Wage Statements Accurately Reported The Wages Paid

Most significantly, Plaintiff's claim is fatally flawed because it does not allege that the wage statements issued to him by CGL failed set forth the wages ***actually paid to him during each pay period*** in which he earned wages.  Rather, he alleges that CGL "failed to include the total numbers worked off-the-clock [by Plaintiff and other PCMs] and the applicable hourly rate *for those hours*."  TAC at 23:12-14.  In other words, Plaintiff alleges that his wage statements were inaccurate because they

---

[11] Moreover, the purported "injuries" identified by Plaintiff are insufficient to state a Section 226 claim in any event.  *See, e.g.*, *Price*, 192 Cal.App.4th at 1142 (finding the plaintiff's allegations that a "lack of information" on wage statements "'caused confusion and possible underpayment of wages due' … and forced the putative class to attempt to reconstruct their time and pay records" insufficient to state a claim under Section 226).

failed to list wages for purported work hours he never recorded as hours worked, and which he now claims should have been paid and are still allegedly owed to him. *Id.*, ¶ 95. However, the mere failure to pay wages that an employee claims he *should have been paid* does not give rise to wage statement penalties.

"Wage statement penalties are awarded only to employees who suffer injury 'as a result of a knowing and intentional failure by an employer to comply with subdivision (a).'" *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1335 (2018), *review denied* (Aug. 22, 2018). However, Cal. Lab. Code § 226(a)'s ("Section 226(a)") mandate that employers accurately report wages applies only to *wages that actually were paid*, not to wages that should have been paid. *See Maldonado,* 22 Cal.App.5th at 1336-37 (the underpayment of wages "does not mandate ... penalties for the wage statements which accurately reflected their compensation"). In other words, the mere failure to itemize compensation that Plaintiff claims he *should have been paid* does not give rise to a Section 226 violation. *Id.* at 1337 (reversing award of wage statement penalties where the wage statements accurately reflected the wages actually paid to the employee).[12]

This Court applied *Maldonado* in *Sherman v. Schneider Nat'l Carriers, Inc.*, 2019 WL 3220585, *5 (C.D. Cal. Mar. 6, 2019) (Birotte, J.), in **dismissing** the plaintiff's inaccurate wage statement claim **with prejudice** on the basis that the plaintiff – like Plaintiff here – had not alleged that his wage statements failed to accurately report the wages actually paid to him in the corresponding pay period. Instead, the *Sherman* plaintiff alleged that the defendant violated Section 226 because his wage statements omitted unpaid time employees spent on the job during their breaks when they were allegedly required to be on call. *Id.* Because the plaintiff had

---

[12] *See also Soto v. Motel 6 Operating, L.P.*, 4 Cal.App.5th 385, 392 (2016) (recognizing that Section 226's statutory purpose is to "*document* the *paid wages* to ensure the employee is fully informed regarding the calculation of *those wages*" (emph. added)).

**MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

"alleged only that the amount he was *paid* was incorrect, *not* that the wage statements *inaccurately reflected* the wages he was paid," the court dismissed the claim with prejudice. *Id.* (emph. added) ("Accordingly, the wage statements do not violate § 226(a) even if the amount paid was incorrect."). The same result should issue here.

Moreover, Plaintiff's 226 claim is predicated entirely on CGL's alleged failure to pay for off-the-clock work (*see* TAC, ¶¶ 94-95), rendering his claim "impermissible because [Section 226] is not intended to permit a 'double recovery' such as Plaintiff seeks here." *Parsittie*, 2019 WL 8163645, at *7 (C.D. Cal. Oct. 29, 2019). In *Parsittie*, 2019 WL 8163645, at *7, the plaintiff did not allege any additional facts in support of his Section 226 claim besides those for his overtime and meal/rest break claims. As such, the court dismissed the plaintiff's Section 226 claim as impermissibly duplicative. *Id.*; *see also Pyara v. Sysco Corp.*, 2016 WL 3916339, at *7 (E.D. Cal. July 20, 2016) ("[P]ermitting a plaintiff to use violations of meal and rest period regulations to form the basis of a CLC section 226 claim would result in an improper multiple recovery by the employee.").

Here, Plaintiff's Section 226 claims is similarly predicated *entirely* on his allegations alleged in support of his First and Second Causes of action for minimum and overtime wage violations. *See* TAC, ¶¶ 47-48, 79-80, 95. However, Section 226 "is not intended to permit the 'double recovery' that Plaintiff seeks here." *Parsittie*, 2019 WL 8163645, at *7; *see also Maldonado*, 22 Cal. App. 5th at 1336-37 (It is "illogical to think" that "Legislature intended ... any failure to pay overtime at the appropriate rate [to] also generate[ ] a wage statement injury justifying the imposition of wage statement penalties."). Thus, Plaintiff fails to state a claim under Section 226 on this basis as well. *See, e.g., Parsittie v. Schneider Logistics, Inc.*, 2020 WL 2120003, *8-9 (C.D. Cal. Apr. 3, 2020) (Fitzgerald, J.) ("*Parsittie II*") (dismissing Section 226 claim *without leave to amend* where plaintiff's wage statement claim was based on the same theories as his claims for unpaid wages and missed breaks, "which is impermissible").

1    Accordingly, even if Plaintiff was entitled to additional compensation that was

2    not reflected on his wage statements, he cannot establish that his wage statements

3    were inaccurate, as "wage statements do not violate § 226(a) *even if the amount paid*

4    *was incorrect*."  *See Sherman*, 2019 WL 3220585 at *5 (emph. added).

5    **4.      Section 226.7 Payments Are Not Subject To Reporting**

6    To the extent Plaintiff seeks recovery under Section 226(e) for the purported

7    non-payment of Section 226.7 meal and rest break premiums (which is not at all clear

8    from the TAC's allegations), this claim fails, in part, because Section 226.7 payments

9    are ***not*** included in the list of what ***must be itemized on wage statements*** under

10   Section 226(a).  *See* Cal. Lab. Code § 226(a).[13]

11   First, neither the plain language nor the legislative history of Section 226(a)

12   requires that wage statements itemize such payments for missed meal or rest breaks.

13   Section 226(a) requires employers to list only nine specific items on an employee's

14   wage statement, none of which include Section 226.7 payments.   Section 226(a) "is

15   highly detailed," and "[w]hen a statute omits a particular category from a more

16   generalized list, a court can reasonably infer a specific legislative intent not to include

17   that category within the statute's mandate."  *Soto*, 4 Cal.App.5th at 391.

18   Further, if Section 226.7 payments were included in that list, an employee

19   would be further incentivized to forgo his meal and rest breaks in order to pursue a

20   *double recovery*, one in the form of a missed meal and rest break payment under

21   Section 226.7 and another in the form of an inaccurate wage statement penalty under

22   Section 226.   However, as discussed above, this is <u>not</u> the result intended by the

23   California Legislature in enacting Section 226(a).   As the legislative history of

24

25

26   [13] Section 226(a) requires employers to itemize: (1) gross wages earned; (2) total hours worked; (3) piece-rate units earned; (4) deductions; (5) net wages earned; (6) inclusive dates of pay period; (7) employee's name and social security number or employee identification number; (8) employer's name and address; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

27

28

130508583.3

17

Section 226(a) indicates, "the purpose of Section 226 was for transparency, **not** double recovery." *Driscoll*, 2011 WL 10366147 (emph. added).[14]

Second, as discussed in detail above, **Section 226.7 payments** "**are not wages earned for the purposes of Section 226(a)**" because they are actually *liquidated damages*. *Nguyen*, 2011 WL 6018284, at *8; *see also Pena v. Taylor Farms Pacific, Inc.*, 2014 WL 1665231, *9 (E.D. Cal. Apr. 23, 2014) (holding that Section 226.7 payments "need not be itemized" on wage statements). Because Section 226.7's premium payment is a statutory remedy for an employer's conduct, not an amount earned for work performed by an employee, an employer's failure – however willful – to pay Section 226.7 statutory remedies does not trigger Section 226. Other courts in this district have followed suit.[15] So too did the California Court of Appeal when it held that "[S]ection 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226." *Naranjo*, 40 Cal.App.5th at 474.

Therefore, Plaintiff's Section 226 claim also fails to the extent it is predicated on an alleged failure to itemize Section 226.7 payments.

---

[14] *See also* RJN, Exh. C (Assem. Com. on Lab. Rels., Analysis of A.B. 3731 (1976)), p. 1 ("The purpose of requiring greater wage stub information is to insure that employees are adequately informed of compensation *received* and are not shortchanged by their employers.") (emph. added). Moreover, although the opinion letters of the California Division of Labor Standards Enforcement ("DLSE") are not binding on this Court, they have nevertheless expressed agreement that *transparency* is the goal of Section 226. *See, e.g.*, RJN, Exh. D (DLSE Op. Ltr. (July 6, 2006)), p. 2 ("The purpose of the wage statement requirement is to provide *transparency* as to the *calculation* of wages.") (emph. added).

[15] *See, e.g.*, *Dawson v. Hitco Carbon Composites, Inc.*, 2017 WL 7806561, at *7 (C.D. Cal. Aug. 3, 2017) (Gutierrez, J.) ("*Dawson II*") (finding Section 226.7 penalties are not "wages earned" for purposes of Section 226 such that a plaintiff "cannot premise his § 226 claim on [a] failure to include those premiums on … wage statements"); *Henryhand*, 2014 WL 11728721 at *14, (finding the decision in *Jones* well-reasoned and persuasive and held that a plaintiff "cannot advance claims for noncompliant wage statements … based solely on alleged violations of Section 226.7."); *Jones* 2012 WL 3264081, at *8-9 (holding plaintiff could not state a claim under Section 226 based on alleged violations of Section 226.7 because, *inter alia*, the violation underlying a Section 226.7 claim is not a claim for the nonpayment of wages, and it would result in "improper, multiple recovery by the employee").

### D.    THE UCL CLAIM SHOULD BE DISMISSED IN PART

#### 1.    The Claim Fails To Satisfy The Rule 8 Pleading Requirements

The UCL does not proscribe any particular conduct; rather, it borrows from other laws by making them independently actionable as unfair competitive practices. *See Korea Supply v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003). Here, Plaintiff's UCL claim is based entirely on his First, Second, Third, Fourth, and Sixth Causes of Action. *See* TAC, ¶¶ 100-104. As discussed above, Plaintiff's Sixth Causes of Action fails as a matter of law and therefore so too does his derivative UCL claim to the extent predicated thereon. *See, e.g.*, *Dawson*, 2017 WL 7806618, at *8 ("Where a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim either."); *Soratorio*, 2017 WL 1520416, at *8 (dismissing UCL claim due to underlying violations failing).

#### 2.    Plaintiff's UCL Claim Also Fails To The Extent Predicated On Claims That Provide For Remedies That Are Not Recoverable As Restitution Under The UCL

Plaintiff alleges that CGL violated the UCL by, *inter alia*, failing to provide Plaintiff and other PCMs with legally required meal and rest breaks and failing to provide Plaintiff and other PCMs with accurate itemized wage statements. *See* TAC, ¶¶ 101, 102, 104. Based thereon, Plaintiff's UCL claim purports to seek restitution under the UCL for CGL's alleged failure to comply with Section 226 and Section 226.7. *See id.*, Prayer for Relief, ¶¶ 42-43. However, Plaintiff cannot base his UCL claim on payments allegedly owed to him under Section 226 and 226.7 because such payments are not subject to restitution.

Under the UCL, a private plaintiff's "remedies are generally limited to injunctive relief and restitution." *Clark v. Super. Ct.*, 50 Cal.4th 605, 610 (2010). "In describing the difference between restitutionary and compensatory relief, California courts have noted that *restitution* describes relief in which a defendant is asked to *return something he wrongfully received*, while *damages* describe relief in which a defendant is asked to *compensate a plaintiff for injury suffered* as a result of the

defendant's conduct." *Woo v. Home Loan Grp., L.P.*, 2007 WL 6624925, *3 (S.D. Cal. July 27, 2007) (emph. added).  "Thus, courts have consistently held that civil penalties, including those provided for under a 'borrowed' statute, are not available to private plaintiffs under § 17200." *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *8 (C.D. Cal. July 28, 2017) (Fischer, J.).

First, Section 226.7 payments are not recoverable as restitution because, as discussed above, they are essentially ***liquidated damages*** that are intended to compensate for events ***other than time spent working***. *See Kirby*, 53 Cal.4th at 1255 (2012) (holding that Section 226.7 actions, whether for missed meal or rest breaks or both, are not for "nonpayment of wages").  Indeed, as discussed at length above, a Section 226.7 payment does not in any way correlate to the amount of time that an employee actually works through a meal period, and "a *section 226.7* action is brought for the *nonprovision of meal and rest* periods, not for the 'nonpayment of wages.'" *Id.* (emph. in orig.).  As such, such payments are intended to compensate for the injury of being deprived of legally-compliant breaks and are ***not subject to restitution*** as a matter of law.  *See Parsittie*, 2019 WL 8163645, at *8 (recognizing that a Section 226.7 payment qualifies as neither injunctive relief nor restitution).[16]

Second, Section 226 penalties for inaccurate wage statements are similarly not recoverable as restitution under the UCL because they are punitive in nature.  *See, e.g.*, *Campbell v. PriceWaterhouseCoopers*, 2008 WL 3836972, at *6 (E.D. Cal. Aug. 14, 2008) (Sections 226 penalties were not recoverable under the UCL because their

---

[16] *See also Sanders v. Old Dominion Freight Line, Inc.*, 2018 WL 6321631, at *2 (C.D. Cal. Sept. 13, 2018) (Fischer, J.) (holding that "Section 226.7 payments are not restitution for purposes of the UCL"); *Guerrero v. Halliburton Energy Servs., Inc.*, 231 F.Supp.3d 797, 807-08 (E.D. Cal. Feb. 3, 2017) ("[Section] 226.7 wages do not constitute restitution recoverable under UCL" and granting motion to dismiss claim pertaining to Section 226.7 payments); *Soratorio II*, 2017 WL 8220415, at *5 (holding that "[S]ection 226.7 mandates that an employer give its employee something more than the bargained-for money-for-labor exchange" and is "properly classified as penalties, not subject to restitution under the UCL."); *Parson v. Golden State FC, LLC*, 2016 WL 1734010, at *6-7 (N.D. Cal. May 2, 2016) (dismissing UCL claim because Section 226.7 payments are not subject to restitution).

remedies were penalties and not restitution); *see also, e.g.*, *Guerrero,* 231 F.Supp.3d at 808 (dismissing UCL claim based on Sections 226 because such payments are not recoverable as restitution); *Rubin v. Wal-Mart Stores, Inc.*, 599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009) (same); *In re Wal-Mart Stores, Inc.*, 505 F.Supp.2d 609, 619 (N.D. Cal. 2007) (same); *Naranjo*, 40 Cal.App.5th at 474 "[S]ection 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226.").

Accordingly, Plaintiff's UCL claim fails to the extent it is predicated on a failure to make Section 226.7 payments or to provide accurate itemized wage statements under Section 226.

### E.   THE PAGA CLAIM SHOULD BE DISMISSED IN PART

#### 1.   Plaintiff's PAGA Claim Is Derivative Of His Failed Fifth And Sixth Causes of Action

Plaintiff's PAGA claim is largely derivative of his First through Sixth Causes of Action.  *See* TAC, ¶¶ 105-124.  Because his claim is predicated, at least in part, on Plaintiff's  factually and legally insufficient allegations in support of his Fifth and Sixth Causes of Action – which fail to comply with the pleading standards of Rule 8 – it fails as a matter of law to the extent predicated thereon.  *See, e.g.*, *Price*, 192 Cal.App.4th at 1147-48 ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."); *Elliot v. Spherion Pac. Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) (Collins, J.) ("Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim.").

#### 2.   Plaintiff's PAGA Claim Fails To The Extent Predicated On Alleged Violations Of Cal. Lab. Code § 204

As a predicate for his PAGA claim, Plaintiff alleges that CGL failed to timely pay he and other PCMs *during* their employment in violation of Cal. Lab. Code § 204 ("Section 204").  *See* TAC, ¶¶ 119-120.  However, the TAC fails to allege any factual allegations even tending to support such a claim.  While it refers to allegations "explained above," there are no such allegations.  *See id.*, ¶ 120.  Rather, the TAC

alleges *only* that CGL failed to pay Plaintiff and other PCMs certain minimum and overtime wages and meal/rest break premiums *at all* and thus those amounts were "not timely paid." *See id.* However, Section 204 "deals *solely* with the timing of wages not whether these wages were paid." *Hadjavi v. CVS Pharm., Inc.*, 2010 WL 7695383, *2 (C.D. Cal. Sept. 22, 2010) (Otero, J.) (emph. added).

This Court was faced with the very same issue in *Fuentes v. Maxim Healthcare Services, Inc.*, 2018 WL 6137619, at *6 (C.D. Cal. Aug. 9, 2018) (Birotte, J.). In *Fuentes*, the plaintiffs' PAGA claim asserted violations of Section 204, "which requires employers to pay employees twice per month." *Id.* The Court recognized that "[t]he sole purpose of [Section 204] is to require an employer of labor who comes within its terms to maintain two regular pay days each month, within the dates required in that section…. Section 204 does *not* address whether an employer paid the correct amount of wages." *Id.* (int. quot. marks omitted; emph. added). Because the plaintiffs did not allege that the defendant failed to pay them two times a month, the Court struck their references to Section 204 in support of their PAGA claim.[17]

Here, as in *Hadjavi* and *Fuentes*, Plaintiff's allegation that CGL failed to pay certain wages *at all* does not plausibly suggest that it failed to comply with the pay timing requirements of Section 204. As such, Plaintiff has not stated a claim for civil penalties under PAGA based on an alleged violation of Section 204, and his PAGA claim should be dismissed to the extent predicated thereon.

### 3.   Plaintiff's PAGA Claim Fails To The Extent Predicated On Alleged Violations Of Cal. Lab. Code § 1174

As a predicate for his PAGA claim, Plaintiff also alleges that CGL failed to "keep complete and accurate payroll records for Plaintiff and [other PCMs]" in

---

[17] *See, e.g.*, *Sanders*, 2018 WL 6321631, at *4 (striking Section 204 references because "there are no plausible allegations … that Defendant failed to pay wages in compliance with the timing requirements … as set forth in section 204; instead, Plaintiffs' allegations appear to be certain wages were not paid at all").

violation of Cal. Lab. Code § 1174 ("Section 1174").  *See* TAC, ¶¶ 123-124. However, Plaintiff does not provide *any* factual details even tending support his allegation that CGL failed to maintain records.  *See id.*

This Court dealt with this very issue in *Duran v. Maxim Healthcare Services Inc.*, 2018 WL 5915644, at *6 (C.D. Cal. Mar. 9, 2018) (Birotte, J.).  In *Duran*, the plaintiffs sought civil penalties under PAGA based upon record keeping violations. *Id.*  However, like Plaintiff here, they did not provide *any* factual details to support their allegation. *Id.*  The plaintiffs alleged only that they were "informed and believe ... [that] Defendant[ ] ... fail[ed] to maintain certain records which employers are required to maintain, including, but not limited to, keeping records evidencing every hour worked by Plaintiffs." *Id.* (int. quot. marks omitted).  Based on such allegations, the Court found that the plaintiffs had not sufficiently alleged a factual basis for their allegation that the defendant had failed to maintain record.  *Id.*  Therefore, their Section 1174 allegations could not serve as a basis for their PAGA claim.  *Id.*

Here, Plaintiff's allegation that "Defendants do not keep complete and accurate payroll records" is even less detailed than the plaintiffs' allegations in *Duran*.  As such, Plaintiff has not sufficient alleged a factual basis for his allegation that CGL failed to maintain records, and his Section 1174 allegations cannot serve as a basis for his PAGA claim.  *See, e.g.*, *Tavares v. Cargill Inc.*, 2019 WL 2918061, at *9 n.4 (E.D. Cal. July 8, 2019) (holding that plaintiff could not seek civil penalties under PAGA for Section 1174 violations because plaintiff had not "asserted actual claims that defendants … failed to keep complete accurate payroll records").  Accordingly, Plaintiff has not stated a claim for civil penalties under PAGA based on an alleged violation of Section 1174, and his PAGA claim should be dismissed to the extent predicated thereon.

### F.    THE REQUEST FOR DECLARATORY RELIEF SHOULD BE DISMISSED

Plaintiff's TAC retains his multiple requests that "the Court declare, adjudge and decree that Defendants violated California [law]" (*i.e.*, a declaratory judgment)

are similarly improper and should be dismissed.  *See* TAC, Prayer for Relief, ¶¶ 5, 10, 17, 24, 31, 36, 41.  "Declaratory relief generally operates prospectively to declare future rights, rather than to redress past wrongs…. [T]he remedy is to be used in the interests of preventive justice, to declare rights rather than execute them."  *Jolley v. Chase Home Fin., LLC*, 213 Cal.App.4th 872, 909 (2013).  Here, Plaintiff's requests for declaratory relief seek only to redress past wrongs; they do not seek to set controversies at rest *before* they lead to repudiation of purported obligations.  *See id.*  Thus, this action is not a "proper subject of declaratory relief," and Plaintiff's requests for such relief should be dismissed.[18]  *Id.* (quot. marks omitted); *see Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal.App.4th 1388, 1403-04 (2002) ("Because declaratory relief operates prospectively only, rather than to redress past wrongs," plaintiff's remedy as against defendant for past conduct "lies in pursuit of a fully matured cause of action for money, if any exists at all.").[19]

## G.   FURTHER LEAVE TO AMEND SHOULD BE DENIED

Despite being *thrice* afforded leave to cure the pleading defects in his claims, certain of Plaintiff's claims still suffer from the *same* pleading defects that have rendered those claims subject to dismissal as a matter of law since he first filed his Complaint.  As he has now had <u>three</u> opportunities to include *all* factual details with respect to his purported claims, no further leave to amend should be afforded.  *See, e.g., Aguiar v. Cal. Sierra Exp., Inc.*, 2012 WL 1593202, at *2 (E.D. Cal. May 4, 2012) ("because plaintiff already has had an opportunity to amend in response to prior

---

[18] While the Court denied CGL's prior request to *strike* Plaintiff's claims for declaratory (and injunctive) relief, the Court's denial was based solely on its determination that a motion to strike was not the proper "procedural vehicle" for such a request.  *See* Dkt. #23 at 12:12-13:1.  The Court made no determination as to the merits of CGL's request.  *See id.*

[19] This is especially true given that Plaintiff is a former employee of CGL.  *See, e.g., Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal.App.4th 881, 894 (1998) (a plaintiff who no longer has any business relationship with a defendant does not have standing to seek declaratory relief, notwithstanding that he might be entitled to damages for past injuries).

Rule 12 Motions … dismissal with prejudice is now warranted"); *In re CMR Mortg. Fund, LLC*, 2009 WL 2870114, at *10 (N.D. Cal. Sep. 4, 2009) (dismissing complaint without leave to amend where plaintiff had received an opportunity to amend but failed to allege new, substantive allegations to support claims).  At a minimum, leave to amend should be denied as to any claims that fail on substantive grounds.

## IV.   CONCLUSION

For all of the foregoing reasons, CGL respectfully requests that the Court grant this Motion and dismiss Plaintiff's claims as set forth herein.

DATED: May 6, 2020                   **McGuireWoods LLP**

By:     /s/ Sabrina A. Beldner
_____
Sabrina A. Beldner, Esq.
Sylvia J. Kim, Esq.
Amy E. Beverlin, Esq.
Ashley R. Li, Esq.

Attorneys for Defendant
CENTERRA GROUP, LLC

Exhibit A

STATE OF CALIFORNIA

DEPARTMENT OF INDUSTRIAL RELATIONS

INDUSTRIAL WELFARE COMMISSION

Public Hearing

June 30, 2000

State capitol, Room 4202

Sacramento, California

Exhibit A

Exhibit A

2

<u>P A R T I C I P A N T S</u>

--o0o--

<u>Industrial Welfare Commission</u>

BILL DOMBROWSKI, Chair

BARRY BROAD

LESLEE COLEMAN

DOUG BOSCO

HAROLD ROSE



<u>Staff</u>

ANDREW R. BARON, Executive Officer

MARGUERITE STRICKLIN, Legal Counsel

RANDALL BORCHERDING, Legal Counsel

MICHAEL MORENO, Principal Analyst

DONNA SCOTTI, Administrative Analyst

NIKKI VERRETT, Analyst

Exhibit A

3

I N D E X

Page

Proceedings                                                          6

Approval of Minutes                                                 6

Amendments to Wage Orders                                           7

Reconsideration of May 26 Actions re Healthcare                    11

    TOM RANKIN, California Labor Federation, AFL-CIO      15

    ALLEN DAVENPORT, Service Employees International       16
        Union

    BARBARA BLAKE, United Nurses Associations of          17
        California, AFSCME

    RICHARD HOLOBER, California Nurses Association         18

    DON MADDY, George Steffes, Inc.; California            19
        Healthcare Association

Meal and Rest Period Proposals                                     23

    TOM RANKIN, California Labor Federation, AFL-CIO      25

    JULIANNE BROYLES, California Chamber of Commerce      26

    JAMES ABRAMS, California Hotel and Motel              27
        Association

    SPIKE KAHN, AFSCME Council 57                         30

Amendment to Wage Order 5 - Personal Attendants,                   33
Resident Managers, 24-Hour Childcare

Commercial Fishing Regulations                                     35

Ski Industry Regulations                                           38

    TOM RANKIN, California Labor Federation, AFL-CIO      39

**GOLDEN STATE REPORTING**
P. O. BOX 5848
Monterey, CA  93944-0848
(831) 663-8851

PAM MITCHELL, Mammoth Mountain Ski Area employee  41

BILL CAMP, Sacramento Central Labor Council       43


INDEX (Continued)                                    Page

MARCIE BERMAN, California Employment Lawyers       44
     Association

PATRICIA GATES, Van Bourg, Weinberg, Roger &      45
     Rosenfeld

BOB ROBERTS, California Ski Industry Associations 47

Executive, Administrative, and Professional Duties   59

BRUCE YOUNG, California Retailers Association      61

LYNN THOMPSON, Law Firm of Bryan Cave, LLP;       63
     California Retailers Association

ART PULASKI, California Labor Federation, AFL-CIO 106

TOM RANKIN, California Labor Federation, AFL-CIO 111

WALLY KNOX, California State Assembly member      113

JUDY PEREZ, Communication Workers of America      117

MARCIE BERMAN, California Employment Lawyers      117
     Association

LAURA HO, Saperstein, Goldstein, Demchak &        124
     Baller

PATRICIA GATES, Van Bourg, Weinberg, Roger &      126
     Rosenfeld

TOM BRANDEN, Machinists Union, District           135
     Lodge 190

DON HUNSUCKER, United Food and Commercial         137
     Workers Local 1288

WALTER JOHNSON, San Francisco Labor Council       145

Summaries and Statements as to the Basis                    161

Extension of Interim Wage Order 2000                        162

Other Business                                             163

    MARY LOU THOMPSON, Littler, Mendelson, Fastiff,  163
        Tichy & Mathiason

INDEX (Continued)                                          Page

    TOM RANKIN, California Labor Federation, AFL-CIO 166

Adjournment                                                167

Certificate of Reporter/Transcriber                        168

**GOLDEN STATE REPORTING**
**P. O. BOX 5848**
**Monterey, CA  93944-0848**
**(831) 663-8851**

Exhibit A

25

1          COMMISSIONER ROSE:  Aye.

2          COMMISSIONER DOMBROWSKI:  Five to nothing.  That

3     is adopted.

4          Let's go to Item 4.  Commissioner Broad has

5     circulated language concerning meal periods and rest

6     periods for Orders 1 through 13 and 15.  Would you like

7     to --

8          COMMISSIONER BROAD:  Yes, Mr. Chairman.  This is

9     a rather -- a relatively small issue, but I think a

10    significant one, and that is we received testimony that

11    despite the fact that employees are entitled to a meal

12    period or rest period, that there really is no incentive

13    as we establish it, for example, in overtime or other

14    areas, for employers to ensure that people are given

15    their rights to a meal period and rest period.  At this

16    point, if they are not giving a meal period or rest

17    period, the only remedy is an injunction against the

18    employer or -- saying they must give them.

19         And what I wanted to do, and I'd to sort of

20    amend the language that's in there to make it clearer,

21    that what it would require is that on any day that an

22    employer does not provide a meal period or rest period in

23    accordance with our regulations, that it shall pay the

24    employee one hour -- one additional hour of pay at the

Exhibit A

1  employee's regular rate of compensation for each workday

2  that the meal or rest period is not provided.

3          I believe that this will ensure that people do

4  get proper meal periods and rest periods.  And I would --

5          COMMISSIONER DOMBROWSKI:  Let me ask a question.

6  If you're an employer and you provide for a 30-minute

7  meal period a day, and your employee misses that meal

8  period or eats while working through that meal period, I

9  believe you get paid, correct?  It's a paid -- it would

10  then be a paid meal period.

11          COMMISSIONER BROAD:  Yes, it would be a paid

12  meal period.

13          COMMISSIONER DOMBROWSKI:  Right.

14          COMMISSIONER BROAD:  I mean, assuming they pay

15  you for it.  I mean --

16          COMMISSIONER DOMBROWSKI:  Assuming that -- well,

17  okay.  Does this say, then, if you had a 30-minute meal

18  period as your standard procedure, you would get -- and

19  you missed that, you get an hour's worth of pay?  Is that

20  what I'm -- additional -- an hour additional pay.

21          COMMISSIONER BROAD:  If your employer did not

22  let you have your meal period, I think, is what it says.

23  So it's -- it doesn't involve, you know, waivers of a

24  meal period or time off or anything of that sort.  And

1    rest periods, of course, are somewhat different.

2    Employers are obligated to provide rest periods --

3              COMMISSIONER DOMBROWSKI:  Correct.

4              COMMISSIONER BROAD:  -- duty-free and must pay

5    for them.  So if you don't provide a rest period, then

6    the -- you know, the employee gets their day's pay, but

7    they don't get the rest, and so that's -- with respect to

8    a meal period, it doesn't have to be compensated.

9              COMMISSIONER DOMBROWSKI:  Okay.

10             COMMISSIONER BROAD:  So it's particularly

11   egregious with regard to rest periods.

12             COMMISSIONER DOMBROWSKI:  Okay.  I don't -- does

13   anyone wish to testify on this item?

14             MR. RANKIN:  Tom Rankin, California Labor

15   Federation.

16             I would like to express our support for

17   Commissioner Broad's proposal.  As he stated, the problem

18   exists right now that there is no remedy for a missed

19   meal period or a missed rest period.  And what his

20   proposal does is provide a remedy.

21             And the purpose of the rest period and the meal

22   period is, in the case of rest periods, to have a rest

23   break where an employee is relieved from work duties.

24   The same is true for meal periods, to provide a break

Exhibit A

1    where people can partake of a meal.  It is not sufficient

2    that they -- if they don't get their meal period, they

3    simply get paid for that half hour.  Sure they do;

4    they're working that half hour.  I would hope they would.

5            This provision of Mr. Broad's at least provides

6    a minor disincentive for employers not to deny employees

7    their rights to rest and meal breaks.

8            MS. BROYLES:  Good morning, commissioners.

9    Julianne Broyles, from the California Chamber of

10   Commerce.

11           We had not been apprised, of course, of this

12   particular provision early on.  Otherwise we probably

13   would have had more extensive comments on it.

14           I guess I would have to, first of all, raise the

15   issue of the authority to establish a new crime, which

16   basically this is doing.  Additionally, we would also

17   point out that if the employee has missed a meal period,

18   they are going to be paid for the meal period in almost

19   all instances.  In terms of setting up a new penalty and

20   a crime for basically missing a rest period, as far as I

21   know there is no statute that would permit that to be

22   done.  And we would oppose this particular amendment.

23           MR. ABRAMS:  Thank you, Mr. Chairman, members of

24   the Commission.  My name is Jim Abrams.  I'm with the

1    California Hotel and Motel Association.

2         And two issues:  first of all, we also question

3    the legislative authority of the Commission to, in

4    essence, adopt and impose new penalties with respect to

5    violations of what is, in essence, a statute, and then

6    the statute picking up the regulations of the Industrial

7    Welfare Commission.  So, we object to and question the

8    authority of the IWC to adopt this particular provision.

9         If, however -- and not conceding the point --

10   if, however, this type of language is adopted, I have

11   several questions.

12        First of all, Commissioner Broad, is it your

13   intent that the hour of pay that you reference here would

14   be treated as an hour worked for purposes of calculating

15   daily or weekly overtime?

16        COMMISSIONER BROAD:  No.

17        MR. ABRAMS:  I think -- and again, not conceding

18   that the Commission has any authority to adopt any such

19   provision as this, but if you decide to do so, I would

20   suggest to you that you need to make that clear.

21        Secondly, I -- I'm not sure I understood your

22   comments with regard to on-duty -- agreed upon on-duty

23   meal periods.  I -- I think, in reading the language

24   here, my understanding was that it was intended that an

1    agreed upon on-duty meal period, for which the employee

2    is, in fact, paid for the half hour that he or she is

3    working, in essence, does not enter into this equation at

4    all.  But you made a comment a moment ago that quite --

5    with all due respect, confused me.  I just want to

6    clarify that.

7         COMMISSIONER BROAD:  The employer who, under our

8    regulations, lawfully establishes an on-duty meal period

9    would not be affected if the employee then takes the on-

10   duty meal period.  This is an employer who says, "You do

11   not get lunch today, you do not get your rest break, you

12   must work now."  That is -- that is the intent.

13        Let me respond, if I may.  Clearly, I don't

14   intend this to be an hour counted towards hours worked

15   any more than the overtime penalty.  And, of course, the

16   courts have long construed overtime as a penalty, in

17   effect, on employers for working people more than full --

18   you know, that is how it's been construed, as more than

19   the -- the daily normal workday.  It is viewed as a

20   penalty and a disincentive in order to encourage

21   employers not to.  So, it is in the same authority that

22   we provide overtime pay that we provide this extra hour

23   of pay.  And that --

24        So, now, with regard to creating a new crime, I

1  guess you could argue that anything we do that changes

2  something creates a new crime to the extent that things -

3  - that there are certain aspects of our wage orders that,

4  if violated, can be prosecuted criminally.  But I don't

5  believe we have the authority to establish a new crime in

6  the sense that we could say if you -- if you deny someone

7  their meal period or rest period, that you shall spend

8  six months in jail or a year in jail or it will be a

9  felony and so forth.  No, we cannot establish new crimes.

10 The Legislature, however, can establish crimes for

11 violations of our wage orders, which is their

12 prerogative, not ours.

13         MR. ABRAMS:  Understood.  I -- and on that note,

14 I would -- we -- the California Hotel and Motel

15 Association objects to the proposal on the ground that

16 the -- we submit the Commission does not have the legal

17 authority to adopt such a penalty, also on the ground

18 that if -- to any extent that an employer is required to

19 pay this one hour of pay for a meal period missed, that

20 that has to be offset against whatever penalties the

21 Legislature has established for violation of the

22 Commission's wage orders.  Otherwise you are basically

23 saying to an employer, "You are going to be punished

24 twice."

1          So we object to the proposed amendment.

2          MS. BROYLES:  Mr. Commissioner, can I make one

3     final point?

4          If this is something that the Commission would

5     like to move forward on and put over -- or at least put

6     out notice so --

7          COMMISSIONER DOMBROWSKI:  It was noticed.  It

8     was in the notice.

9          COMMISSIONER BROAD:  It has been in our notice

10    for a month.  I mean, we did --

11         MS. BROYLES:  In terms of the full penalty, the

12    hour penalty?

13         COMMISSIONER BROAD:  No.  The language that's

14    proposed to be adopted has been out there.  I think --

15         MS. BROYLES:  Right.

16         COMMISSIONER BROAD:  -- you may agree with that

17    substantively --

18         MS. BROYLES:  The amendment of Mr. -- of

19    Commissioner Broad.

20         COMMISSIONER BROAD:  -- but there's no last-

21    minute aspect to this at all.

22         MS. KAHN:  Spike Kahn, AFSCME Council 57.

23         I represent quite a few workers in the hospital

24    industry at UCSF that -- just in policy, the clinics are

1    always understaffed and they just never have enough

2    staffing to let that person come out on a break.  It's

3    not every day, it just happens that people, because the

4    clinics are full, the patients are coming, you have to

5    keep the flow going because you don't want your patients

6    to be waiting while you go out.  And day after day,

7    people don't get a break.

8            And I would like to support this amendment and

9    explain that, by having it on the books, it would give us

10   quite a bit of incentive to our employers that they would

11   just start following the contracts and following the laws

12   that are already down there, that you have to have a

13   break, just by having it on the books.  I don't think it

14   would come up that often, in the same way that they don't

15   usually violate any of the -- the overtime laws.  It's

16   just a matter of they would be encouraged much more to

17   not keep on working us through our breaks and our lunch

18   times if it were there.

19           So we're in support of that.

20           COMMISSIONER DOMBROWSKI:  Thank you.

21           Ms. Stricklin, regarding the legal question?

22           MS. STRICKLIN:  You were asking whether there

23   was any legal impediment to such a penalty.  And 516 of

24   the Labor Code allows the Commission to adopt or amend

1    working condition orders with respect to break periods,

2    meal periods, and days of rest.

3         And then again, if you look at Section 558, the

4    last section says that civil penalties provided in 558

5    are in addition to any other civil or criminal penalty

6    provided by law, so that a regulation which sets forth a

7    penalty would just be an additional penalty, which the

8    IWC has the power to do.

9         COMMISSIONER DOMBROWSKI:  Any other questions

10   from the commissioners?

11        (No response)

12        COMMISSIONER DOMBROWSKI:  Okay.  Commissioner

13   Broad, I believe you want to make a motion?

14        COMMISSIONER BROAD:  Yeah.  I'll move it.

15        COMMISSIONER DOMBROWSKI:  Is there a second?

16        COMMISSIONER ROSE:  Second.

17        COMMISSIONER DOMBROWSKI:  Okay.  Call the roll.

18        MR. BARON:  Dombrowski.

19        COMMISSIONER DOMBROWSKI:  No.

20        MR. BARON:  Bosco.

21        COMMISSIONER BOSCO:  Aye.

22        MR. BARON:  Broad.

23        COMMISSIONER BROAD:  Aye.

24        MR. BARON:  Coleman.

1                COMMISSIONER COLEMAN:  No.

2                MR. BARON:  Rose.

3                COMMISSIONER ROSE:  Aye.

4                MR. BARON:  Three to two.

5                (Applause)

6                COMMISSIONER DOMBROWSKI:  Okay.  I'd like to

7    move to Item 5, consideration of --

8                COMMISSIONER BOSCO:  How about a round of

9    applause for the veterinary?

10               COMMISSIONER BROAD:  Take care of the dogs and

11   cats right now.

12               (Laughter)

13               COMMISSIONER DOMBROWSKI:  Here we are, moving

14   along so well.

15               Item 5, consideration of amendment to Wage Order

16   5 concerning personal attendants.

17               I'd ask Mr. Baron to brief us.

18               MR. BARON:  This is an overall issue that has

19   been discussed previously.  The background to this is

20   that there had been language in the earlier version of

21   the wage orders, in 5-93, that, when we went -- going

22   back to that -- had been changed in '98, but then when we

23   went back to, now, the earlier versions, referenced a 54-

24   hour workday (sic) for these categories of employees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

| Case No. | CV 13–891 DSF (RZx) | Date | 6/18/13 |
|---|---|---|---|
| Title | Marco Rodriguez v. Old Dominion Freight Line, Inc. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**       (In Chambers) Order GRANTING IN PART and DENYING IN
PART Defendant's Motion to Dismiss (Docket No. 19)

       The Court deems this matter appropriate for decision without oral argument.  See
Fed. R. Civ. P. 78; Local Rule 7–15.

## I.    INTRODUCTION

       Marco Rodriguez brings claims for violation of California Business and
Professions Code § 17200 *et seq.* (UCL Claims), violation of California Labor Code §§
201 and 202, Violation of California Labor Code § 226(a), wrongful termination in
violation of public policy, retaliation in violation of public policy, intentional infliction of
emotional distress (IIED), and defamation against Old Dominion Freight Line, Inc.
(ODFL).  ODFL moves to dismiss Rodriguez's First Amended Complaint (FAC).
       From March 2010 to January 5, 2012, Rodriguez worked as a "Pick-Up and
Delivery" driver for ODFL, a non-exempt and hourly position.  (FAC ¶ 3.)  He earned
$18.85 per hour at the time of his termination.  (Id.)  During his time with ODFL,
Rodriguez was employed in ODFL's "Less than Truckload" (LTL) shipping business.
(Id.)  This business generally consists of intrastate transportation of relatively small
packages and freight.  (Id.)
       From April 2010 to late-2011, Rodriguez worked on a regular route between
ODFL's Montebello terminal to areas in the San Fernando Valley.  (Id. ¶ 12.)  He
thereafter worked as an "on-call" Pick-Up and Delivery driver until he was terminated.
       Rodriguez alleges that on average he worked 50 hours per week and that he

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

regularly worked 60 hours per week.  (Id. ¶ 13.)  ODFL classified Rodriguez as "part-time" and did not provide him with benefits such as health insurance.  (Id.)  Rodriguez alleges that ODFL failed to pay him at the proper overtime rate and that ODFL failed to provide uninterrupted meal periods and rest breaks.  (Id. ¶¶ 13, 17.)  Rodriguez claims that ODFL required employees to "clock-in" and "clock-out" for meal periods on handheld devices immediately after starting their shifts and that ODFL would require him on occasion to indicate — fraudulently — on his handheld device that he took his meal period from 7:30 a.m. to 8:00 a.m.  (Id. ¶ 17.)

Rodriguez claims that he was told by ODFL's dispatcher, "Marty," that ODFL's policy was to pay overtime for shifts of 13 hours or more only.  (Id. ¶ 14.)  He alleges that he has nine wage statements dated between May 7, 2010 and January 6, 2012 that all indicate "small payments of overtime for shifts of 13 hours or more only."  (Id.)

Rodriguez was terminated on January 5, 2012 for "poor performance."  (Id. ¶ 21.)  He claims the reasons for his dismissal were pretextual and that he was terminated in retaliation for complaining about ODFL's overtime policy and failure to provide required meal and rest breaks.  (Id. ¶¶ 21–22.)  He claims that he was denied subsequent employment as a result of ODFL telling his prospective employers that he was terminated for "poor performance."  (Id. ¶ 26.)  Specifically, Rodriguez claims that he received an offer of employment on October 1, 2012 with a October 22, 2012 start date that was rescinded due to ODFL's statements about his performance.  (Id.)

Rodriguez also brings several class action claims.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (alteration in original) (internal quotation marks omitted).  But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson, 551 U.S. at 94.  However, allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true, Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), and a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in
original) (internal quotation marks omitted). A complaint must "state a claim to relief
that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint
must plead "factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility
standard is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Id.

　　　Ruling on a motion to dismiss is "a context-specific task that requires the
reviewing court to draw on its judicial experience and common sense. But where the
well-pleaded facts do not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not show[n] – that the pleader is
entitled to relief." Id. at 1950 (alteration in original) (citation and internal quotation
marks omitted).

　　　"Normally, when a viable case may be pled, a district court should freely grant
leave to amend." Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir.
2011). Leave to amend should be granted even if the plaintiff did not request leave,
unless it is clear that the complaint cannot be cured by the allegation of different or
additional facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

**III.　DISCUSSION**

　　　Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its
pleading once as a matter of course within . . . 21 days after service of a responsive
pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is
earlier." The Court dismissed Rodriguez's Complaint on April 2, 2013 because he failed
to respond to ODFL's motion to dismiss and failed to notify the Court that he had elected
to amend his pleading as Rule 15(a)(1) permits. (Docket No. 11.) The Court's order
permitted Rodriguez to file an amended complaint no later than April 24, 2013. (Id.)
Rodriguez filed his FAC on April 24, 2013. (Docket No. 16.) As the Court provided
Rodriguez until April 24, 2013 to file his amended complaint and did not place
restrictions on any amendment, the Court will allow Rodriguez to add the wrongful
termination claim and class action claims in his FAC.

　　　In any event, as Rule 15(a)(2) provides that, in considering amendments to
pleadings, "[t]he court should freely give leave when justice so requires." This rule
should be interpreted and applied with "extreme liberality," Roth v. Garcia Marquez, 942
F.2d 617, 628 (9th Cir. 1991), and leave to amend "should be granted unless amendment
would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates
undue delay." Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d
1241, 1246 (9th Cir. 1999) (internal quotation marks omitted); see also Foman, 371 U.S.

Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

at 182 (identifying these factors).  It is far from clear that permitting the amendments here would prejudice ODFL, create undue delay, or that the amendments were sought in bad faith.  The new claims and amendments in Rodriguez's FAC are permissible.

### A.    Individual UCL Claims

Rodriguez bases his UCL claims on violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, failure to provide meal and rest breaks as required by California Labor Code § 226.7, failure to timely pay wages on termination in violation of California Labor Code §§ 201 and 202, and failure to provide accurate itemized wage statements in violation of California Labor Code § 226(a).

"The UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (citations and quotation marks omitted)).  "Virtually any law — federal, state or local — can serve as a predicate for an action under Business and Professions Code section 17200."  Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1361 (2010) (citations and quotation marks omitted).

### 1.    FLSA Violations

ODFL wrongly argues that Rodriguez's FLSA violation allegation fails because Rodriguez "fails to allege any facts that could show he was not exempt from the overtime provisions under . . . the FLSA."  (ODFL's Mot. to Dismiss 7 (citations omitted)).  "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies."  Reich v. Am. Driver Serv., Inc., 33 F.3d 1153, 1156 (9th Cir. 1994) (citation and quotation marks omitted).  Rodriguez has pleaded that ODFL's business "consists of intrastate transportation, wholly within the State of California . . . ."  (FAC ¶ 11.)  He has adequately pleaded that the FLSA applies and that ODFL is subject to the FLSA's regulations and overtime provisions.  See Reich, 33 F.3d at 1155 (footnote omitted) ("Any motor carrier that engages in wholly intrastate commerce . . . is subject to the Secretary of Labor's jurisdiction, and consequently, to the maximum hours provisions of the FLSA").  While ODFL may ultimately be exempt from the FLSA's requirements, any exemption inquiry is necessarily fact-intensive.  See id. at 1155–56.  Such an inquiry is ill-suited to a motion to dismiss.

The FLSA requires that "no employer shall employ any of his employees who in a workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives

Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

compensation" for hours worked beyond forty hours "at a rate not less than one and one half times the rate at which he or she is regularly employed." 29 U.S.C. § 207(a)(1). "To establish a claim for failure to pay overtime under the FLSA, the plaintiff must aver that: (1) defendant was plaintiff's employer; (2) plaintiff worked more than forty hours in a week; and (3) plaintiff did not receive compensation for his employment in excess of the forty hours." McKeen-Chaplin v. Franklin Am. Mortg. Co., No. C 10–5243 SBA, 2011 WL 4082543, at *3 (N.D. Cal. Sept. 13, 2011) (citation and quotation marks omitted).

Rodriguez has alleged that he worked more than 40 hours per week without adequate overtime compensation. (FAC ¶¶ 13, 24, 40.) He has adequately pleaded a violation of the FLSA and satisfied the requirements of Federal Rule of Civil Procedure 8(a)(2). In addition to his allegations regarding working 50 hours per week on average, Rodriguez specifically points to nine wage statements in which he alleges he was paid overtime for shifts of 13 hours or more only. (FAC ¶ 14.) This is more than enough to satisfy the pleading requirements of Rule 8(a)(2).

### 2.    Meal and Rest Break Violations

Rodriguez also bases his UCL claim on ODFL's alleged violation of California Labor Code § 226.7. (See FAC ¶¶ 17, 18, 41.) "State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." Brinker Rest. Corp. v. Super. Ct., 53 Cal. 4th 1004, 1018 (citations omitted). "Labor Code section 226.7, subdivision (a) prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission [(IWC)].'" Id. (footnote omitted). ODFL argues that Rodriguez's UCL claim based on a § 226.7 violation is deficient because Rodriguez's UCL claim is inadequately pleaded under Rule 8 and because § 226.7 violation payments are not subject to restitution under the UCL.

Rodriguez's UCL claim is adequately pleaded with respect to § 226.7. He specifically alleges that he was not provided a lawful meal period or rest break. (FAC ¶¶ 17, 41.) He further alleges that he was not provided the pay required by § 226.7 in lieu of a rest break. (Id. ¶ 18.) Rodriguez details specific practices, (e.g. id. ¶ 17), and instances, (e.g. id. ¶ 19), in the FAC. These allegations are plainly sufficient under Rule 8(a)(2) to support Rodriguez's UCL claims with respect to the alleged § 226.7 violations.

Claims for § 226.7 violations are actionable as UCL claims. Under relevant California law, payments owed for § 226.7 violations are restitutionary in nature and are therefore actionable under the UCL. See Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1099–1100 ("We conclude that the remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations . . ."); Brinker, 53 Cal. 4th at 1018 (citations omitted) ("Employers who

Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

violate these requirements must pay premium wages"); see also Brandon v. Nat'l R.R.
Passenger Corp. Amtrak, No. CV 12–5796 PSG (VBKx), 2013 WL 800265, at *4 (C.D.
Cal. Mar. 1, 2013) (citations omitted) ("Plaintiff seeks restitution for unpaid meal and rest
periods and unreimbursed business expenses.  These expenses are restitutionary and
therefore recoverable under the UCL"); Ordonez v. Radio Shack, No. CV 10–7060 CAS
(MANx), 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) (citations omitted) ("The
Court concludes that plaintiff's UCL claim can be maintained to the extent it is based on
allegations of section 226.7").

 ODFL argues that Kirby v. Immoos Fire Prot., Inc., 53 Cal. 4th 1244 (2012)
stands for the proposition that a UCL restitution claim cannot be maintained when the
basis for the UCL claim is an alleged §226.7 violation.  Kirby held that "section 226.7
claims do not constitute 'action[s] brought for the nonpayment of wages' within the
meaning of section 218.5."  Id. at 1259.

However, Kirby also reaffirmed that "the remedy for a violation of the statutory
obligation to provide IWC-mandated meal and rest periods is 'one additional hour of pay
at the employee's regular rate of compensation for each work day that the meal or rest
period is not provided.'"  Id. at 1256 (quoting § 226.7(b)).  Thus, if, as Rodriguez alleges,
ODFL failed to provide him the required meal and rest breaks, he is entitled to one
additional hour of pay for each work day in which he was not provided the required
breaks.  In a UCL claim, "restitution means the return of money to those persons from
whom it was taken or who had an ownership interest in it."  Shersher v. Super. Ct., 154
Cal. App. 4th 1491, 1497 (2007) (citation and quotation marks omitted).  Regardless of
whether ODFL's failure to pay Rodriguez what he was owed under § 226.7 is considered
a wage, he has alleged that he is owed money and may thus maintain a UCL restitution
claim to obtain the money he is owed.  Rodriguez has adequately pleaded an actionable
UCL claim for violation of § 226.7.

### 3.    Labor Code §§ 201

For the reasons below, Rodriguez may maintain a UCL claim for Labor Code §
201 violations only for unpaid overtime compensation.  He may not maintain a UCL
claim for money owed for required meal period and rest breaks that were not provided as
Labor Code sections 201 and 202 do not permit recovery for unpaid meal and rest breaks.
The portion of his UCL claim based on violations of Labor Code § 201 is dismissed with
prejudice.

### 4.    Labor Code § 226(a)

As explained below, Rodriguez may not maintain a claim for the provision of

Exhibit B

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

inaccurate wage statements in violation of California Labor Code § 226(a). Accordingly, he may also not maintain a UCL claim on this basis. This portion of his UCL claim is dismissed without prejudice.

### B.    Individual Labor Code §§ 201 and 203 Claims

Rodriguez claims that ODFL failed to timely pay all wages owed to him on his termination, including all overtime, meal period, and rest break pay. (FAC ¶¶ 52–53.)

California Labor Code § 201(1) requires that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Under California law, "'[w]ages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code § 200(a). California Labor Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 . . . any wages of an employee who is discharged . . . the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days . . . .

As explained above, Rodriguez has adequately pleaded an FLSA claim and, as such, has stated a claim for unpaid overtime wages. He may pursue a § 201(a) claim to recover those unpaid wages.

Section 203 entitles a terminated employee to "waiting time penalties" of up to 30 days' wages if the employer "willfully fails to pay" the employee any outstanding wages immediately upon termination. Choate v. Celite Corp., 215 Cal. App. 4th 1460, 155 Cal. Rptr. 3d 915, 922 (2013) (citing Cal. Labor Code § 201). "To act willfully, an employer need not act with a deliberate evil purpose." Id. (citation and quotation marks omitted). "Rather, the employer need only intentionally fail or refuse to perform an act which was required to be done." Id. (citation and quotation marks omitted). "However, an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness." Id. (quoting Cal. Code Regs. tit. 8, § 13520(a)). Rodriguez has alleged that he complained to ODFL's plant manager, his direct supervisor, regarding ODFL's allegedly unlawful overtime policy. (FAC ¶ 19.) He has also alleged that several wage statements indicate that he was not paid the proper overtime amounts. (Id. ¶ 14.) Rodriguez has sufficiently pleaded that ODFL intentionally failed or refused to pay him what he was due. He has adequately pleaded a § 203 violation with respect to unpaid overtime compensation.

Exhibit B

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Rodriguez may not, however, pursue section 201 and 203 claims for the non-payment of premium wages due as a result of ODFL failing to provide required meal periods and rest breaks. Kirby forecloses the possibility of an action under sections 201 and 203 for the nonpayment of wages.

> When an employee sues for a violation of section 226.7, he or she is suing because an employer has allegedly "require[d] [the] employee to work during [a] meal or rest period mandated by an applicable order of the Industrial Welfare Commission." (§ 226.7, subd. (a).) In other words, a section 226.7 action is brought for the nonprovision of meal and rest periods, not for the "nonpayment of wages."

> Sections 201 and 202 provide a useful contrast to section 226.7. Section 201 provides that when "an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately" (§ 201, subd. (a)), and section 202 provides that when an "employee has given 72 hours previous notice of his or her intention to quit, . . . the employee is entitled to his or her wages at the time of quitting" (§ 202, subd. (a)). When an employee sues on the ground that his or her former employer has violated one of these provisions, the suit is an "action brought for the nonpayment of wages." In other words, the employer's nonpayment of wages is the basis for the lawsuit. By contrast, when an employee sues on the ground that his or her employer has violated section 226.7, the basis for the lawsuit is the employer's nonprovision of statutorily required rest breaks or meal breaks. . . .

> The failure to provide required meal and rest breaks is what triggers a violation of section 226.7. Accordingly, a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks.

53 Cal. 4th at 1255–57. Kirby makes clear that an employer who owes an employee a premium wage under § 226.7 is not also liable for a violation of § 203. See Jones v. Spherion Staffing LLC, No. LA CV11–06462 JAK (JCx), 2012 WL 3264081, at *8–*9 (C.D. Cal. Aug. 7, 2012) ("For several reasons, the Court finds that Plaintiff cannot advance a claim for . . . failure to pay wages due upon termination pursuant to section 203 based solely on alleged violations of section 226.7"). As Rodriguez cannot maintain a § 203 claim on the basis of unpaid compensation due under § 226.7 as a matter of law, this portion of his § 203 claim is dismissed with prejudice.

Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

**C.      Individual Labor Code § 226(a) Claims**

Rodriguez has failed to adequately plead a Labor Code § 226(a) claim.  Labor Code § 226(a) "sets forth nine itemized requirements for a wage statement."  <u>Price v. Starbucks Corp.</u>, 192 Cal. App. 4th 1136, 1142 n.4 (2011).[1]  "To recover damages under section 226, subdivision (e), an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute."  <u>Id.</u> at 1142 (footnote omitted).  "The injury requirement in section 226, subdivision (e), cannot be satisfied simply because one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement."  <u>Id.</u>

As currently pleaded, Rodriguez's alleged injury, the non-payment of overtime wages owed, did not arise "as a result of a knowing and intentional failure" of ODFL to list the proper hourly rate for overtime.  In fact, Rodriguez alleges that he was able to determine that he was not properly compensated for all hours he considered to be overtime hours because the wage statements were "accurate" in the sense that they listed the hourly rate that ODFL actually applied to hours worked.  (<u>See</u> FAC ¶ 14.)  By contrast, <u>Price</u> held that a cognizable injury in fact arises from, for example, cases in which plaintiffs "sufficiently alleged (and presented evidence) of an injury arising from inaccurate or incomplete wage statements, which required those plaintiffs to engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid."  192 Cal. App. 4th at 1143 (citations omitted).  Rodriguez pleads that he "independently knew that [ODFL's] overtime policy was unlawful" and specifies that he was paid overtime in "similar position[s] with similar duties . . . for shifts over 8 hours per day and/or 40 hours per week."  (FAC ¶ 16.)  Rodriguez has failed to state a claim for a § 226(a) violation.

While it appears Rodriguez is unable to state a § 226(a) claim as a matter of law, he may amend the FAC as it is not certain that any amendment would be futile.

**D.      Wrongful Termination in Violation of Public Policy**

As explained above, Federal Rule of Civil Procedure 15(a)(2) dictates that Rodriguez be permitted to amend his complaint to include a wrongful termination claim.  This claim will not be dismissed.

---

[1] The relevant § 226(a) requirement is that a wage statement lists "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . . ."

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**E.        Retaliation in Violation of Public Policy**

Rodriguez has sufficiently pleaded his retaliation in violation of public policy claim.  (See FAC ¶¶ 69–75.)  He has alleged sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  In any event, ODFL's arguments regarding temporal proximity and admissibility are more properly addressed in a motion for summary judgment.

**F.        Intentional Infliction of Emotional Distress (IIED)**

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted).

Taking his allegations as true, Rodriguez has done enough under California law to survive a motion to dismiss as to his IIED claim as he has alleged that ODFL had knowledge of the falsity of its conduct, including making allegedly false representations to the California Employment Development Department, (FAC ¶¶ 22–27), and retaliating against him, which allegedly constitutes outrageous conduct, (id. ¶¶ 69–71, 75), and that such conduct could cause the "severe emotional distress, anxiety" and other injuries Rodriguez claims, (id. ¶¶ 88).  See Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 288 (2009) (reversing a grant of summary judgment on an IIED claim and explaining that "[a] claim for distress arising out of employment is not barred where the distress is engendered by an employer's illegal discrimination practices . . . [n]either discrimination nor harassment is a normal incident of employment" (citations and quotation marks omitted)).  Rodriguez has done enough to provide ODFL with fair notice of the scope and substance of his IIED claim and questions as to admissibility and applicable evidence supporting the claim are best addressed in a motion for summary judgment.

**G.        Defamation**

"Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage."  Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999) (citations omitted).  "Publication means communication to some third person who understands the defamatory meaning of the statement and its application

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

to the person to whom reference is made." Id. " Publication need not be to the 'public' at large; communication to a single individual is sufficient." Id. (quotation marks omitted) (citing Cunningham v. Simpson, 1 Cal. 3d 301, 306 (1969)).

"Under the 'common-interest privilege,' codified in California in Civil Code section 47, subdivision (c) . . . a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made 'without malice.'" Lundquist v. Reusser, 7 Cal. 4th 1193, 1279 (1994) (footnote omitted).

> [I]n enacting section 47(c), the Legislature intended to codify without change the common law common-interest privilege. At common law, that privilege embodied a two-step analysis, under which the defendant bore the initial burden of demonstrating that the allegedly defamatory communication was made upon a privileged occasion, and the plaintiff then bore the burden of proving that defendant had made the statement with malice.

Id. at 1208. "Courts have consistently interpreted section 47, subdivision (c) to apply in the employment context." Noel v. River Hills Wilsons, Inc., 113 Cal. App. 4th 1363, 1369 (2003) (citation omitted). Further, the plain text of § 47(c) makes clear that it "applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant."

As currently pleaded, Rodriguez's defamation claim concerns statements regarding "poor performance" made to a prospective employer. (FAC ¶ 93.) Section 47(c) clearly applies to his defamation claim. As he has failed to allege that the statements were made with malice, his claim is deficient. Rodriguez's defamation claim is dismissed without prejudice.

### H.    Class Claims

Motions to dismiss class allegations are rarely granted. See, e.g. In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (explaining that "dismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery") (citations and quotation marks omitted). The Ninth Circuit has explained that "[a]lthough a party seeking class certification is not always entitled to discovery on the class certification issue, the propriety of a class action cannot be determined in some cases without discovery [and] the better and more

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable."  Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (citations and quotation marks omitted).  "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court."  Id. (citations and quotation marks omitted).  ODFL's motion is premature and the Court declines to consider its substantive arguments at this time.

### I.    Injunctive Relief

Former employees may not seek injunctive relief because they "would not stand to benefit from an injunction . . . at [their] former place of work."  Walsh v. Nev. Dep't of Human Res., 471 F.3d 1033, 1037 (9th Cir. 2006).  Rodriguez is a former employee.  (See FAC ¶ 3.)  Rodriguez seeks "injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code § 17200 . . . ."  (FAC Prayer ¶ 8.)  His legal basis for injunctive relief is unclear, however, as he argues only that he "seeks injunctive relief only as is necessary to enforce the restitution, including, if necessary, the appointment of a receiver."  (Pl.'s Opp'n 23.)  He cites no cases or statutory support for the propriety of his injunction request and the scope or effect of his requested injunctive relief is entirely unclear from the FAC.  The injunctive relief request is dismissed without prejudice.

### J.    Damage Claims

Rodriguez seeks punitive damages for his wrongful termination, retaliation, IIED, and defamation claims.  As noted above, his wrongful termination, retaliation, and IIED claims will not be dismissed.  "California law long has recognized that discharges in violation of public policy may be actionable torts for which punitive damages can be recovered under Civil Code section 3294."  Commodore Home Sys., Inc. v. Super. Ct., 32 Cal. 3d 211, 220 (1982) (citations omitted).  California Civil Code § 3294 provides "that punitive damages are available in all noncontractual civil actions unless otherwise limited."  Id. at 217.

Rodriguez brings claims directly against his employer.  (See, e.g., FAC ¶¶ 68, 72, 75–76).  An action for wrongful discharge in violation of public policy "can only be asserted against an employer."  Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 900 (2008).  A corporation such as ODFL "is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal person for purposes of applying various tort, agency, and jurisdiction principles."  Kight v. CashCall, Inc., 200 Cal. App. 4th 1377, 1392 (2011)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

(citations omitted).  Civil Code § 3294(b) applies because it states that "[a]n employer shall not be liable" for punitive damages "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice."  As ODFL is a corporate employer, in order to maintain his punitive damage claims, Rodriguez must allege that the relevant "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  See Miklosy, 44 Cal. 4th at 900 ("An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort").  He fails to do so.  For example, he does not plead any facts about the knowledge or intentions of any "officer, director, or managing agent of" ODFL.

As Rodriguez's IIED and retaliation claims are brought directly against ODFL, they are also subject to the § 3294(b) limitation.  Rodriguez's punitive damage claims are dismissed without prejudice.

Rodriguez brings Labor Code §§ 201 and 203 claims for "actual, consequential, and incidental losses and damages."  ODFL properly points out that the statutory language of sections 201 and 203 provide only for the payment of wages due, § 201, and penalty wages, § 203.  There is no provision for "consequential, and incidental losses and damages."  Rodriguez's "consequential, and incidental losses and damages" claim is dismissed without prejudice.

### K.    Attorneys' Fees under California Code of Civil Procedure § 1021.5

"Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees."  Robinson v. City of Chowchilla, 202 Cal. App. 4th 382, 390 (2011) (citing Olson v. Auto. Club of S. Cal., 42 Cal. 4th 1142, 1147 (2008)).  "The purpose of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases."  Id. (citing Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 565 (2004)).  A court may award attorneys fees under § 1021.5 to:

> (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate, and (6) in the interests of justice the

**Exhibit B**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

fees should not be paid out of the recovery.

Id. (footnote omitted).  As the class allegations remain, it remains possible for Rodriguez to satisfy the second and third criteria above.  The attorneys' fees request will not be stricken.

## IV.   CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.  The FAC is dismissed with leave to amend consistent with this order.  An amended complaint must be filed and served no later than July 9, 2013.  Failure to file by that date will waive the right to do so.  The Court does not grant leave to add new defendants or new claims.  Leave to add defendants or new claims must be sought by a separate, properly noticed motion.  Defendant's response will be due July 30, 2013.

IT IS SO ORDERED.

**Exhibit B**

ASSEMBLY COMMITTEE ON LABOR RELATIONS
Bill Lockyer, Chairman

HEARING DATE:  May 18, 1976


BILL:    AB 3731  (As Amended May 12, 1976)

AUTHOR:  Lockyer

SUBJECT:  Wage Statement and Workers Compensation Information

BACKGROUND

   Existing law requires employers to provide a wage stub or
statement showing all deductions, dates of pay period, name of
employee and employer.  There are no penalties for a failure to
comply with this provision.

   Employers are also required to conspicuously post at their
place of employment the name of the current workers compensation
insurance carrier and to inform injured employees of
compensation benefits.

PROPOSED LEGISLATION

   In addition to those items now required under law to be shown on
wage stubs, this measure requires the listing of gross and net
income, and all deductions by item, and entitles any employee
to damages for any injury suffered as a result of an employer's
knowing and intentional failure to provide wage information.

   This measure also requires every employer, except homeowners
employing domestics, to inform every new employee of workers
compensation benefits and medical treatment, and the procedure
for obtaining such benefits and treatment in the event of an
employee's work injury.


ANALYSIS

   The purpose of requiring greater wage stub information is to
insure that employees are adequately informed of compensation
received and are not shortchanged by their employers.  Lack of
wage information or improper information can also make it difficult
for employees to establish eligibility for unemployment insurance.

   The requirement that employees be informed of workers
compensation benefits and medical treatment will insure that
employees are aware of their rights to treatment and benefits
and know the correct procedure to obtain them.  There is

Exhibit C

Exhibit C

AB 3731                          -2-

evidence that certain workers, particularly non-english
speaking, are not aware of workers compensation and fail to
receive benefits when injured. Presently, many employers voluntarily
provide such information.


     This measure is supported by the California Rural
Legal Assistance and the Western Conference of Teamsters.

Exhibit C

Exhibit D

**STATE OF CALIFORNIA**                                                     Arnold Schwarzenegger, *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS

Headquarters

P.O. Box 420603
San Francisco, CA  94142
Tel: (415) 703-4810
Fax: (415) 703-4807

**Robert A. Jones**
*Acting State Labor Commissioner*
*and Chief Counsel*
*Division of Labor Standards Enforcement*


July 6, 2006


Colette Wolf
Boise Cascade LLC
Legal Department
11111 West Jefferson Street
P.O. Box 50
Boise, Id. 83728


Re: Electronic Itemized Wage Statements


Dear Ms. Wolf:

Thank you for your inquiry concerning the application of Labor Code section 226(a). Specifically, you have requested an opinion as to whether under certain circumstances an employer's obligation to provide an employee with a "wage statement" may be met by providing an employee with such a record in electronic form, as an alternative to a "hard copy" paper document.

The requirement for an employer to provide employees with wage statements is contained in Labor Code section 226(a). Section 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or an applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if

**2006.07.06**

Exhibit D

the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates[1] in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

The purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper.[1] Section 226(a) makes it possible for an employee to retain a copy of his/her own pay records which are not subject to alteration.

Labor Code section 226(a) indicates that a wage statement may be in the form of an "accurate itemized statement in writing" when the employee is paid by personal check or cash. Labor Code section 8 states in pertinent part: "Writing includes any form of recorded message capable of comprehension by ordinary visual means." As an electronically stored wage statement which is accessible by an employee may be read on a screen or printed and read as a hard copy, it appears to qualify as a "statement in writing."

Section 226(a) provides that an employee being paid with a payroll check be provided a wage statement as a "detachable part of the check." While the reference to "detachable part of the check" is susceptible to an interpretation that a "hard copy" may be required, in the context of the entire subsection it appears to allow for the continued use of the convenient and traditional "pay stub" alternative to a separate statement in writing.

The apparent intent of both forms of wage statements described in Section 226(a) is to allow employees to maintain their own records of wages earned, deductions, and pay received. The Division in recent years has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at

---

[1] Whether an employee is properly classified as exempt from the overtime pay requirements of Labor Code section 510 and the IWC Orders is not susceptible to verification from review of the wage statement alone. However, a wage statement may reveal that an employee is non-exempt if it shows that an employee is paid a salary of less than twice the minimum wage calculated on the basis of a 40 hour week. See Labor Code section 515(a).

**2006.07.06**

Exhibit D

no expense to the employee. Additionally, the Division has indicated that the record keeping requirements of Labor Code section 226 and 1174 must be adhered to and the pay records must be retained by the employer for a period of at least three years and be accessible by employees and former employees. Any electronic wage statement system must incorporate proper safeguards that ensure the confidentiality of the employee's confidential information.

The system envisioned by your client appears to meet the concerns outlined above. Your client indicates that its electronic wage statement procedures will incorporate the following features:

1.      An employee may elect to receive paper wage statements at any time;

2.      The wage statements will contain all information required under Labor Code section 226(a) and will be available on a secure website no later than pay day;

3.      Access to the website will be controlled by unique employee identification numbers and confidential personal identification numbers (PINs). The website will be protected by a firewall and is expected to be available at all times with the exception of downtime caused by system errors or maintenance requirements;

4.      Employees will be able to access their records through their own personal computers or by company provided computers. Computer terminals will be available to all employees for accessing these records at work.

5.      Employees will be able to print copies of their electronic wage statements at work on printers that are in close proximity to the computer or computer terminal. There will be no charge to the employee for accessing their records or printing them out. Employees may also access their records over the internet and save it electronically and/or print it on their own printer.

6.      Wage statements will be maintained electronically for at least three years and will continue to be available to active employees for that entire time. Former employees will be provided paper copies at no charge upon request.

There is no requirement for employers to obtain approval from the Division before implementing an electronic wage statement system. Indeed the Legislature has not established such a duty on the part of the DLSE or provided DLSE with such administrative authority. As with most provisions of the Labor Code employers are required to comply without any formal action by the Labor Commissioner.[2]  Due to both changes in the law and confusion that has resulted from previous Opinion Letters 1999.07.19 and 2002.12.04, this letter supersedes them and they are withdrawn.

---

[2]  Some provisions of the Labor Code and Wage Orders require prior Labor Commissioner action in the form of issuance of a registration, granting of approval, or provision of consent. For example, there are registration requirements in the garment, car wash, and farm labor industries which require employers to obtain a registration from the Labor Commissioner prior to employing workers. Similarly, employers must obtain the "consent" of the Labor Commissioner before a minor may be employed in the entertainment industry. Employers also may apply to the Labor Commissioner for exemptions to certain sections of the Orders of the Industrial Welfare Commission. [These examples are not intended as an exhaustive list of such provisions.]

2006.07.06

Exhibit D

Exhibit D

This opinion letter sets forth an interpretation of Labor Code section 226(a) which is utilized in our administrative enforcement efforts of the wage statement requirement. This interpretation is based on our understanding as to the current state of the law and, of course, is subject to subsequent interpretations by the courts and/or action of the Legislature. Employers are advised that while the courts may find this opinion of the enforcement agency to be persuasive authority, they are not required to follow this interpretation and that compliance with the guidelines suggested herein do not establish a "safe harbor" in actions brought by private parties under auspices of the Labor Code Private Attorneys General Act of 2004 (PAGA) or other private enforcement actions.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the questions presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Division of Labor Standards Enforcement.

Thank you for your attention to the requirements of the California wage and hour laws and your inquiry.

Very Truly Yours,

/s/

Robert A. Jones
Chief Counsel and Acting
Labor Commissioner

4

**2006.07.06**

Exhibit D